**In re ISHPEMING HOTEL COMPANY, d/b/a The Mather Inn, Debtor.**

**Bankruptcy No. 83–00008.**

United States Bankruptcy Court, W.D. Michigan.

May 13, 1986.

James B. Steward, Ishpeming, Mich., for debtor.

David M. Savu, Ishpeming, Mich., for City of Ishpeming.

Patricia Micklow, Chief Civil Counsel, County of Marquette, Marquette, Mich.

OPINION

MARVIN L. HEITMAN, Bankruptcy Judge.

*Redetermination of Tax Liability for Ad Valorem Property Taxes for the Years 1978–85, Inclusive, and for the Redetermination of Personal Property Taxes for the Years 1980–82, Inclusive*

This matter is before me on a Motion brought by the Debtor-in-possession to determine the Debtor's tax liability under Title 11 U.S.C. Section 506. The thrust of the Debtor's Motion is that the local tax assessor and the Board of Review in the City of Ishpeming valued its Hotel property greatly in excess of 50% of the fair market value of that property for the years in question. In addition, the Debtor asserts that a similar error was made with respect to its personal property for the years indicated below. The State equalized value of the Debtor's real estate, commonly

known as "The Mather Inn", for each of the years in question is as follows:

| | | |
|------|---|----------|
| 1978 | — | $106,566 |
| 1979 | — | $126,002 |
| 1980 | — | $142,000 |
| 1981 | — | $149,697 |
| 1982 | — | $148,000 |
| 1983 | — | $142,450 |
| 1984 | — | $142,450 |
| 1985 | — | $142,450 |

The assessed value for the Debtor's personal property located within the Mather Inn Hotel for each of the years questioned by the Debtor is as follows:

| | | |
|------|---|---------|
| 1980 | — | $37,100 |
| 1981 | — | $37,100 |
| 1982 | — | $37,100 |

The Debtor argues that a proposed sale of the real estate and personal property for a total price of $180,000, with $110,000 allocated to the real estate and the balance to the personal property, after making an allowance for the value of the liquor license held by the Debtor, demonstrates that the assessed value assigned to these properties by the City of Ishpeming is faulty and that it has been for some number of years.

The City of Ishpeming appeared and contested, first of all, the jurisdiction of the Court to redetermine the real property values as determined by the legally-constituted assessor and Board of Review, and secondly argued that the Debtor has failed to make a showing on the evidence before the Court that any redetermination is appropriate. The County of Marquette also appeared and joins with the City of Ishpeming in contesting the claim of the Debtor-in-possession.

Testimony by an appraiser initially hired by one of the secured parties holding a lien on the real and personal property, the City Assessor, one of the major stockholders of the Debtor Corporation, and Mrs. Kolhek, who has been managing the property, was taken.

The Debtor's expert testified that, in her opinion, the fair market value of the real property owned by the Debtor was $96,000, and that the value of the liquor license held by the Debtor was $50,000. The Debtor argues that by subtracting the value of the liquor license from the proposed sale price of $70,000 for the personal property, the total fair market value of the personal property located in the Hotel proper has a market value of $20,000.

No separate valuation of the personal property was presented by the Debtor in support of its contention other than the opinion of the real estate appraiser.

The Assessor for the City of Ishpeming testified that he used the methods prescribed under Michigan law for the appraisal of real property, and, indeed, used reference materials similar to that employed by the appraiser for the Debtor. He further testified that unlike the Debtor's appraiser he could not use "liquidation sales" for comparison purposes in establishing fair market value, that being prohibited by statute.

Mrs. Retaskie, the Debtor's appraiser, testified that she used sales comparables located in Sault Ste. Marie, a city approximately 165 miles from Ishpeming, Escanaba, a city approximately 80–90 miles from Ishpeming, and another sale in another city in the Upper Peninsula, all of which had been foreclosed by banks and were sold by the banks following the foreclosure. The City's Assessor testified that he believed the methods employed by him throughout the years that he was the tax assessor, which involved all of the years in question, were similar to those that he used for 1986. There was no serious contention that either party had used improper appraisal methods. The City Assessor testified that, in his opinion, the value reached for 1985 and 1986 of $142,450 accurately reflected the State equalized valuation based upon the fair market value of the property.

I am generally satisfied that both the appraisers who testified used generally-accepted methods for their appraisals, and while I note that the City Assessor may not use the liquidation values or forced sale values for purposes of determining fair market value as such, the fact that the only sales of similar types of properties in the

Upper Peninsula in recent years have been of such nature is significant as bearing upon the economic obsolescence of these types of structures. Basically, the difference between the two appraisals is the economic obsolescence factor applied by Mrs. Retaskie as opposed to the City Assessor.

The authority for the United States Bankruptcy Court to review tax claims arises out of its general power to examine and allow claims generally. *Gardner v. State of New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Specifically, however, Title 11 U.S.C. Section 505 provides in its applicable parts as follows:

"(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or ..."

The above Section is but a continuation of those provisions contained in the Bankruptcy Act originally set forth in Section 64(a) of the Act. That Section, insofar as pertinent here, provides:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates ... shall be ... (4) taxes legally due and owing by the bankrupt to the United States or any state ...; provided ... That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the bankruptcy court ..."

Mr. Justice Black, who wrote the Opinion of the Court in *Arkansas Corporation Commission, et al v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), in construing Section 64(a) stated, 61 S.Ct. on page 891:

"It is thus obvious that the trustee's petition, which the bankruptcy court refused to dismiss, rested entirely upon the assumption that 64(a)(4) gave the bankruptcy court power to hold a completely new hearing in order to set its own value on the property, regardless of the value fixed by the state through its expert and specifically constituted quasi-judicial agency.

But we do not so interpret Section 64(a)(4). What Section 64(a)(4) relates to is 'taxes legally due and owing by the bankrupt'. And what that Section further provides is that 'in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court; ...' Nothing in this language indicates that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical question of controverted fact—the value of the property tax. Manifestly, whether or not taxes are 'legally due and owing' to a state depends upon the valid laws of the state. Ad valorem taxes depend upon a determination of value. The governmental function of fixing the value for tax purposes has rarely, if ever, been a judicial function."

Mr. Justice Black went on to say on page 892:

"... and there is no more reason to assume that Congress intended that the bankruptcy court should fail to give respect to an unappealed determination of value made by the *Arkansas Corporation Commission*. Bankruptcy and reorganization proceedings today cover a wide area in the business field. But there is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set up the federal courts as a super-assessment tribunals over state taxing agencies ... and the policy of revising and redetermining state tax val-

uations contended for by the trustee would be a complete reversal of our historic national policy of federal non-interference with the taxing power of states."

In 1966, the Bankruptcy Code was amended to delete Section 64(a)(4) and a similar provision was inserted under Section 2(2)(a) of the Act, which was substantially the same as set forth in Section 505(a)(1) of the Code, thereby clearly conferring jurisdiction on the Bankruptcy Court to hear and determine tax claims.

■ Since this Court has jurisdiction to determine the legality of tax claims where there has not been a prior contest and adjudication by a judicial or administrative tribunal of competent jurisdiction, the first question to consider is whether or not the Board of Review of the City of Ishpeming constitutes such a tribunal since the testimony was that the Debtor, or one of its officers, had contested the assessed valuation before that Board each year prior to the filing of the Debtor's Petition in Chapter 11 through and including 1983 (in addition to appealing the assessed valuation to the Michigan State Tax Tribunal in the year 1980). The City of Ishpeming and the County assert that the Board of Review is a quasi-judicial or administrative body, and that therefore this Court should not reconsider the assessed values for those years in which the Debtor appeared before the Board of Review.

Under Michigan tax law, a taxpayer may not appeal to the Michigan Tax Tribunal unless he first contests the valuation before the local Board of Review and pays any taxes that they ultimately determine under protest.

The Debtor, of course, insists that the Board of Review does not constitute such a tribunal as would prevent the Court from reconsidering the assessed values of the Debtor's property for taxing purposes by the City of Ishpeming. Logic would seem to support the Debtor's contention in this respect because the Board of Review acts as an administrative agency in finally setting the assessed values of property. Nonetheless, the Board does have authority

to administer oaths, take testimony, etc., and, on sufficient cause being shown, to correct the assessment in such manner as in their judgment will make the valuation thereof relatively just and equal. Michigan Statutes Annotated, Section 7.30; M.C.L.A. Section 211.30.

It is the contention of the City and the County that the Board of Review acts in a quasi-judicial capacity, even though it is an administrative board. This is supported by case law in the State of Michigan. *National Bank of Detroit v. Detroit,* 272 Mich. 610, 262 N.W. 422 (1935).

Other Courts have considered whether an administrative board similar to the Board of Review in Michigan constitutes a quasi-judicial body such that an appearance before it by the taxpayer contesting the assessed valuations would constitute res adjudicata, thereby prohibiting the Bankruptcy Court from reconsidering the tax claims.

In *City of Amarillo v. Eakens,* 399 F.2d 541 (5th Cir.1968), *cert. den.,* 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692, a factually similar case under Texas law, the Fifth Circuit Court of Appeals upheld a Bankruptcy referee who ruled that he did not have jurisdiction to redetermine real and personal property taxes where these had been contested before, or adjudicated by, the county board of equalization but did have jurisdiction where not so contested. This conclusion was also supported in *Quinn v. Aero Services,* 172 F.2d 157 (9th Cir.1949), *cert. den.,* 338 U.S. 816, 70 S.Ct. 55, 94 L.Ed. 494.

Since the uncontroverted testimony of the City Assessor was that the Debtor appeared before the City of Ishpeming Board of Review for the years 1978–83, inclusive, and in the year 1980 had also filed an appeal with the State Tax Tribunal, and had been in each of these cases afforded relief, except before the Tax Tribunal, I conclude that this Court is precluded from reconsidering taxes for those years based on a· claimed excessive assessed valuation. This Court is prohibited by res adjudicata from doing so.

With respect to the two remaining years for which assessed value is contested, Mrs. Retaskie testified that in her opinion the fair market value of the Hotel property was $96,000 as of the date of her appraisal, March 20, 1986. She also testified that the fair market value would be applicable for all of the years for which the assessments were contested and hence to the years 1984 and 1985. She also testified that the Hotel had a reproduction cost of over $1,200,000.

This contrasts with the City's assessed valuation for the years in question of $142,-450, which was the State equalized value for the Debtor's real estate in 1984 and 1985. Both applied substantial economic obsolescence factors, although the City Assessor did not use comparable liquidation sales, as previously noted because he is prohibited from doing so by statute. M.S.A. § 7.27 [M.C.L.A. § 211.27]. Mrs. Retaskie did use these sales in her determination of value.

Yet, it is significant that all of the recent comparable sales found by Mrs. Retaskie throughout the Upper Peninsula involving central city hotels were liquidation sales following foreclosure. The City Assessor testified that the replacement cost of the building was $800,000, and that the land itself had a value of $66,000 based upon one recent comparable sale in downtown Ishpeming for $200 a front foot.

■ All in all, I am satisfied that the City of Ishpeming's assessment does not reflect adequate consideration of the economic obsolescence of the Debtor's real property. Downtown hotels in the Upper Peninsula were built at a time when passenger transportation was by railroad, which no longer exists in the Upper Peninsula. Secondly, the advent of the United States highway building program following World War II, and the general trend to transportation by automobile and aircraft has placed these types of structures at a competitive disadvantage with newer motels which have sprung up along the by-pass highway routes isolating the downtown areas of the older cities and towns. Furthermore, the passage of statutes, reg-ulations and building codes, which these older hotel structures do not meet, have diminished the possible usefulness of these structures for alternative uses, except at prohibitive costs. In addition to these factors, there has been a substantial decline in tourism, according to Mrs. Retaskie, which has adversely affected the marketability of such structures.

All of these factors have combined to make the "save-the-local-downtown-hotel" groups' expectations less than realistic unless costs of renovation and repair can be financed by a public subsidy of one sort or another. It is significant that the Mather Inn has lost money for the owners every year since they purchased it in 1978, and that the lessees of the structure, while optimistic, have not succeeded in reversing this trend. If this continues, it is obvious that the structure will have salvage value only, or the value of the land less the costs of demolition of the building, and therefore Mrs. Retaskie's opinion as to its true value is, I find, realistic and more nearly reflects its true cash value than the determination of the taxing entity.

I accordingly find that the fair market value of the real property of the Debtor to be $110,000, and since the assessed value must be placed at one-half of the fair market value, the taxes for the years 1984 and 1985 are ordered adjusted and allowed only in accordance with the rate for the years in question multiplied by the assessed value of $55,000 as determined by this Court.

■ There remains the assessed value of the personal property which is at issue before the Court. This was set at $37,100 for the years 1980, 1981 and 1982, which suggests that the tax authorities valued the personal property located in the Hotel at $74,200. The Debtor claims that because the "Save the Mather Inn" group has agreed to purchase the personal property for a total of $70,000, which includes a liquor license (which was testified to by Mrs. Retaskie as being worth $50,000), relief ought to be given to the Debtor for these taxes as well.

No appraisal was made of the personal property, as such, by a competent apprais-

er. Mrs. Retaskie's opinion that the license was worth $50,000 was based upon the fact that the City of Ishpeming has more licenses than they are entitled to under law, and hence no new licenses will be issued by the Michigan Liquor Control Commission for the foreseeable future. I am not persuaded that a condition of "over-issuance" of licenses by the State necessarily inflates the value of existing licenses, as Mrs. Retaskie claims, since the same situation is true for the City of Negaunee, which is immediately adjacent to the City of Ishpeming, and it has been the personal observation of the Court from previous cases that Class C licenses in that City are hardly saleable at any price. I am satisfied that there has been no showing by the Debtor that it is entitled to relief on its claim that the personal property assessment by the City of Ishpeming is excessive, and accordingly relief on the personal property tax assessments for the years 1980, 1981, and 1982 is denied.

An order may be entered in accordance with the above findings.

IT IS ORDERED that a copy of this Opinion be served upon all attorneys appearing of record at their addresses of record.