**In re David James ROTH, Debtor.**

**FLEET FACTORS CORP., by its AMBASSADOR FACTORS DIVISION, Plaintiff,**

v.

**David James ROTH, Defendant.**

**Bankruptcy No. 92–B–21192 (JJC). Adv. No. 92–5324A.**

United States Bankruptcy Court, S.D. New York.

Sept. 28, 1994.

Derman & Derman by Herbert B. Derman, New York City, for David James Roth.

Ruskin, Moscou, Evans & Faltischek, P.C. by Jeffrey A. Wurst, Mineola, NY, for Ambassador Factors Corp.

## DECISION ON PLAINTIFF'S REQUEST FOR A DEFAULT JUDGMENT AND DEFENDANT'S REQUEST FOR LEAVE TO FILE A LATE ANSWER

JOHN J. CONNELLY, Bankruptcy Judge.

Ambassador Factors Corporation ("Ambassador"), the plaintiff, seeks the entry of a default judgment in this nondischargeability action commenced against the Chapter 7 debtor, David James Roth. In sum, Roth has yet to submit an answer or otherwise move notwithstanding that the complaint was filed almost two years ago. In opposition to the default judgment request, Roth, who until recently appeared pro se, essentially asserts that he was "sandbagged" by Ambassador into thinking that the action would be resolved without the need for legal proceedings. Roth, who also claims to have valid affirmative defenses, now asks for permission to file a late answer. For the following reasons, Ambassador's request for a default judgment is denied and leave is granted to file a late answer.

### I.

Faced with what can only be described as monumental financial obligations, Roth filed a Chapter 7 petition on June 15, 1992. His petition [1], which was prepared by a reputable bankruptcy firm, listed no non-exempt assets but identified roughly 100 creditors who were actually or potentially owed nearly $18.3 million. (Pet. Sched. D). Of these obligations, two debts amounting to $6 million were classified as secured debts; the balance of the debts (including the debt to the plaintiff) were listed as unsecured.

---

1. In order to put into context the facts of this case I have referred to (and taken judicial notice of) the voluntary petition as well as certain other orders and applications which were filed in this case. *See In re Leslie Fay Companies, Inc.,* 166 B.R. 802, 808 (Bankr.S.D.N.Y.1994) (Courts may take judicial notice of matters which are of public record.)

On September 24, 1992, the last date for this creditor to do so, Ambassador commenced this action seeking a declaration that a $350,000 debt it is owed by Roth is nondischargeable. According to the complaint, Roth guaranteed obligations of his friend's company to Ambassador and secured his commitment by delivering preferred shares in Gulf & Western Industries Inc. ("Gulf & Western") valued at approximately $350,000. (Compl. at ¶ 13.) Apparently, Gulf & Western notified its shareholders at some point in 1982 of its intention to convert that particular series of preferred shares. Thereafter, Roth retrieved the collateral from Ambassador, allegedly for the sole purpose of effectuating the aforementioned conversion of the shares. As is readily surmisable, Ambassador now claims that it was duped.[2]

With this bit of history in place, I turn back to the facts germane to the instant motion. As previously mentioned, Ambassador filed the complaint in this action on September 24, 1992. Soon thereafter, Roth's attorney sought to be relieved for reasons not relevant to the instant dispute. (Notice Mot. Dated 11/13/92.) Judge Schwartzberg granted that request on November, 30, 1992 and from that point on, Roth continued the battle pro se. On March 4, 1993, an answer still not filed, counsel for Ambassador deposed Roth for roughly an hour and a half and, at its conclusion, adjourned the examination *sine die*. (Ex. B, Opp'n Def's Cross–Mot. at 48.)

The matter was scheduled for trial and on May 3, 1993 counsel for Ambassador prepared and signed a stipulation (which was so ordered by Judge Schwartzberg) whereby the trial was adjourned for two months to July 1993. (Order dated 5/4/93) For rea-

sons which remain unclear from the record before me, the trial was adjourned on numerous other occasions. (*See e.g.* Ex. A, Notice Cross–Mot. (Letter adjourning trial from 12/13/93 to 1/19/94.)) Indeed, it appears as though nothing transpired in this action, beyond informal conversations between Ambassador's counsel and Roth, until March 28, 1994 when Roth's new counsel advised Ambassador of his being retained by Roth. (Ex. A, Reply Aff.) The record does not make clear who first noticed that Roth had failed to interpose an answer; however, it does indicate that counsel for Roth informally approached counsel for Ambassador to consent to Roth filing a late answer. (Ex. B, Reply Aff.) For reasons which I can not quite comprehend given the facts of this case, Ambassador declined this invitation and chose to seek a default judgment.

Counsel for Ambassador, who concedes that Roth's *pro se* status provides a reasonable excuse for the delay, argues a default judgment is warranted because "as far as likelihood of success on the merits, they haven't shown any evidence that they have any defenses." (Tr. at 6.) Ambassador also complains that it may be more difficult at this time to take discovery of individuals who have knowledge of the facts. (Opp'n Def's Cross–Mot. at ¶ 8.) Counsel for Roth, on the other hand, argues that meritorious defenses regarding the alleged fraud exist, including the fact that Manufacturers Hanover may have wrongfully refused to return the stock. (Tr. at 7.) Additionally, counsel contends that there are certain statutory defenses which result from the fact that Ambassador knew of and failed to act on Roth's failure to return the new shares twelve years ago.[3] (Tr. at 7.)

---

**2.** Specifically, Ambassador claims that "[u]pon information and belief, after receiving the Preferred Stock from Ambassador, [Roth] pledged and delivered either the Preferred Stock or the New Stock to Manufacturers Hanover Trust Company to secure certain other loans and advances made or to be made to or on behalf of the Debtor ..." (Compl. at ¶ 19).

**3.** At the hearing on this motion, Ambassador's counsel objected to this characterization and re-

sponded that Ambassador had promptly commenced an action in state court and obtained a judgment pre-petition in the amount of $700,000. (Tr. at 7–8.) I have searched the file and have failed to find a shred of evidence, beyond counsel's assertions, which confirms the existence of a state court judgment. Indeed, the complaint in this action neither appends nor refers to a state court judgment or pleadings.

## II.

Federal Rule of Civil Procedure 55, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7055, sets forth the steps that litigants must follow in order to obtain a default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993) Where a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the litigant seeking a default judgment must first request, either in the form of an affidavit or otherwise, that the clerk of the court enter default ("Entry of Default"). *Enron*, 10 F.3d at 95, (citing Fed.R.Civ.P. 55(a)). The second step is for the movant to apply for a judgment of default ("Default Judgment") either to the clerk of the court (where the claim is for a sum certain and the defendant has been defaulted for failure to appear) or by motion to the court (in all other instances). *Id.* (citing Fed.R.Civ.P. 55(b)(1) and (2)). After there has been an Entry of Default or a Default Judgment, courts may set aside the former, upon showing of "good cause" and the latter, in accordance with Rule 60(b). *Id.* (citing 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2692, at 464 (2d ed. 1983)); Fed.R.Civ.P. 55(c).

█ Here, Ambassador urges me to grant its request for a default judgment and deny Roth's request for leave to file a late answer because there has been no showing of "excusable default." (Opp'n Def's Cross–Mot. at ¶ 4.) This argument is flawed for it overlooks the fact that Ambassador has yet to obtain an entry of default let alone a default judgment. The "excusable neglect" standard (which I believe Ambassador is actually invoking) is a higher standard that governs the

setting aside of a default judgment under 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276–77 (2d Cir.1981) The proper standard, assuming for the moment that Ambassador had obtained an Entry of Default[4], is the more lenient standard of whether Roth has established "good cause." *Id.* (Holding that ·it is error not to apply the standard of Rule 55(c) where the initial step of securing the entry of a default is omitted.)

█ The Second Circuit has established three criteria which I must assess before I can relieve Roth from an Entry of Default: (1) whether the default was willful; (2) whether setting aside the default would prejudice Ambassador; and (3) whether a meritorious defense is presented. *See Enron*, 10 F.3d at 96; *Meehan*, 652 F.2d at 277. In applying these, I must be mindful that "defaults are generally disfavored and are reserved for rare occasions." *Enron*, 10 F.3d at 96; *Meehan*, 652 F.2d at 277 ("[T]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort.") Where there is a doubt as to "whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96. This is especially so where the party that is to be held in default appears without counsel. *Enron*, 10 F.3d at 96 ("[A]s a general rule, a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se.*"); *In re Martin–Trigona*, 763 F.2d 503, 506 (2d Cir.1985).

█ Applying these general principles in this case leads inexorably to the conclusion that "good cause" has been established. Without a doubt, this is not a case of a willful

---

4. Ambassador's failure to obtain an entry of a default is clearly a technical violation which I have the discretion to overlook. *See Meehan*, 652 F.2d at 276. I do so here because the hearing on the motion for the entry of a default judgment afforded Roth the same opportunity to present mitigating circumstances that he would have had if a default had been entered and a motion to set it aside had been made under Rule 55(c). *Id.* That is not to say that I am giving

litigants the green light to avoid obtaining an entry of default. As the Circuit has noted, "[e]ntering a default pursuant to Rule 55(a) and affording a defendant an opportunity to move to vacate it pursuant to Rule 55(c) is the preferable course because it avoids the need to prepare for and pursue a damage hearing in those instances where the Rule 55(c) motion is granted." *Id.* at 276 n. 5.

default but rather a default which resulted from a lack of familiarity with the rules. Roth's conduct while appearing without counsel, including his appearance at a deposition and his continuous communications with counsel to Ambassador, evidences his intent to fulfill his obligations as a litigant. I find the circumstances here warrant the "special allowance" which the Second Circuit has instructed me to make "for pro se litigants who forfeit legal rights by inadvertent procedural mistakes." *Martin–Trigona,* 763 F.2d at 506.

Allowing Roth to file a late answer will not prejudice Ambassador, although it will cause Ambassador some delay. Delay, however, is insufficient, in and of itself, to establish prejudice. *Enron,* 10 F.3d at 98. That it may be more difficult at this time for Ambassador to take discovery results not from Roth's failure to timely answer, but rather from Ambassador's own failure to properly prosecute its case or move sooner for entry of default. The bottom line is that Ambassador, like the fabled Rip Van Winkle, has slept away many important years and can not now be heard to complain of prejudice.

Finally, Roth has presented a meritorious defense and proffered some evidence beyond conclusory denials to support his defense. *Id.* "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.; In re Carrero,* 94 B.R. 306, 308 (Bankr.S.D.N.Y.1988) (allegations must contain a suggestion which if proven at trial would constitute a complete defense). The underlying action here is to determine whether Ambassador's debt should be excepted from discharge because it was obtained by "false pretenses, false representation or actual fraud ..." 11 U.S.C. § 523(a)(2)(A). Even were I to assume for the moment that Ambassador has a state

court judgment, there is going to have to be a trial on the issues relevant to dischargeability under 11 U.S.C. § 523(a)(2)(A).[5] Were Roth to establish at trial that Manufacturers Hanover improperly withheld the stock or that there was a tug-of-war between Manufacturers Hanover and Ambassador over ownership of the stock, such evidence would certainly dispose of the complaint. *See e.g. In re Allison,* 960 F.2d 481, 483 (5th Cir. 1992) (proof must establish that a debtor is guilty of positive fraud in law, or fraud in fact, involving moral turpitude or intentional wrong; implied fraud, or fraud in law without imputation of bad faith or immorality, is simply not enough); *accord In re Balzano,* 127 B.R. 524, 530 (Bankr.E.D.N.Y.1991). Accordingly, I find that Roth has adequately stated a defense for purposes of Rule 55(c).

For these reasons, Ambassador's motion for a default judgment is denied and Roth is granted twenty days from entry of an order to file an answer. Ambassador is directed to Settle an Order consistent with this decision.

---

5. As I previously mentioned, Ambassador has failed to append a copy of the state court order to its complaint. Similarly, it has failed to invoke the doctrine of collateral estoppel in its complaint. From this vantage point, Ambassador is going to bear the burden at trial of proving by a

preponderance of the evidence that each of the five necessary elements of a cause of action under § 523(a)(2)(A) are met. *See In re Schwartz & Meyers,* 130 B.R. 416, 422 (Bankr.S.D.N.Y.1991), (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).