In re Eugene D'ALESSIO, Jr., Debtor.

Eugene D'ALESSIO, Jr., Plaintiff,

v.

The INTERNAL REVENUE SERVICE and The New York State Department of Taxation and Finance, Defendants.

Bankruptcy No. 93–B–22027 (JJC).
Adv. No. 94–5010A.

United States Bankruptcy Court,
S.D. New York.

May 2, 1995.

---

Kurtzman Haspel & Stein by Joseph Haspel, Spring Valley, NY, for Eugene D'Alessio, Jr.

U.S. Atty. for S.D.N.Y. by Marianne O'Toole, New York City, for I.R.S.

Atty. Gen. for State of New York[1] by Terri Altamura and David Cook, New York City, for New York State Dept. of Taxation and Finance.

## DECISION ON INTERNAL REVENUE SERVICE'S MOTION FOR ABSTENTION OR, ALTERNATIVELY, SUMMARY JUDGMENT

JOHN J. CONNELLY, Bankruptcy Judge, Sitting by Special Designation.

The Internal Revenue Service ("IRS") asks me to abstain from hearing this adversary proceeding commenced by Chapter 7 debtor, Eugene D'Alessio, Jr. ("debtor") to determine his continuing federal tax liability for the years 1979 and 1980. Alternatively, the IRS moves for summary judgment contending that a pre-petition tax and fraud penalty assessment by the IRS fixes the amount owed for those years and establishes the elements necessary to declare the tax debts non-dischargeable as a matter of law. For the following reasons, the request for abstention is denied and the motion for summary judgment is denied in part and granted in part.

### I.[2]

The debtor's troubles with the IRS can be traced back to his failure to timely file in-

---

1. As counsel for the debtor and New York State (the other defendant) have agreed to prosecute their litigation on a parallel course, I have limited the factual recitation here to only those involving the IRS and the debtor.

2. The facts are derived for the most part from a document entitled "Government's Statement Pursuant To Local Bankruptcy Rule 13(h)" (hereinafter "IRS 13(h) Stmt") as well as a document entitled "Statement of Outstanding Material Issues of Fact Pursuant To Local Rule 13(h)" (hereinafter "D'Alessio 13(h) Stmt"). The D'Alessio 13(h) Stmt does not dispute all of the facts set forth in the IRS 13(h) Stmt; consequently, the uncontroverted facts are deemed to be admitted. Local Bankruptcy Rule 13(h).

come tax returns for 1979 and 1980. On June 20, 1980, having not received a tax return for 1979, an IRS agent commenced an investigation to determine whether the debtor owed any federal tax for that year. IRS 13(h) Stmt at ¶ 4. On November 15, 1982, the debtor filed federal income tax returns for 1979 and 1980, both of which listed a zero tax liability for those respective years. *Id.* at ¶ 3. The IRS forwarded these returns to a different agent. *Id.* at ¶ 4.

After a review of the debtor's federal income tax returns, books and records, the IRS agent concluded that the debtor owed $11,771 and $12,456, for 1979 and 1980, respectively. *Id.* at ¶ 5. The agent further concluded that the debtor's underpayment of taxes for 1979 and 1980 represented fraudulent conduct. IRS 13(h) Stmt at ¶¶ 5 & 7. Consequently, the IRS assessed a "fraud penalty" pursuant to 26 U.S.C. § 6653(b) of $5,885.50 for 1979 and $6,228 for 1980. With respect to the 1979 return, the IRS also assessed $6,360.89 in interest charges and a $493.49 penalty for improper estimation of tax liability. *Id.* at ¶ 6. The corresponding amounts for the 1980 assessment are $5,084.90 and $793.62, respectively. *Id.* at ¶ 7. Adding these numbers up yields the tax assessment of $24,510.88 for 1979 and $24,562.52 for 1980.

The record does not reflect that much occurred over the next decade with respect to these tax liabilities. In July 1983, the debtor either tendered or received a credit of $2,800 which amount was applied towards the 1979 liability. Decl. of Joan Hightower at ¶ 11. In April 1989, the debtor tendered $13,000 which sums were applied equally to the 1979 and 1980 tax debts. *Id.*; Answer at

¶ 10. Roughly one month later, the debtor either tendered or received a credit of $863.33 which amount was applied to the 1979 tax liability.[3] Hightower Decl. at ¶ 11.

A statement of the debtor's account at the IRS reflects these reductions to the tax liabilities and also suggests that the amount owed as of February 14, 1994 was $14,363.55 for 1979 and $18,062.52 for 1980. Hightower Decl. Ex. A. The IRS, however, asserts in this motion that "[t]he aggregate amount of the Debtor's due and owing, but unpaid federal income tax liabilities for the tax year ending December 31, 1979, including pre-Petition interest and penalties, less all payments made by the Debtor, is $49,040." IRS 13(h) Stmt at ¶ 8. The IRS also asserts that the debtor now owes $52,006.57 for 1980. *Id.* at ¶ 9.

The debtor filed a voluntary Chapter 7 petition on October 19, 1993. The IRS has not filed a proof of claim as there will be no distribution to creditors in this case. On February 14, 1994, the clerk's office generated and served notice on a list of creditors of an Order discharging the debtor from all properly dischargeable debts. The docket reflects that no other adversary proceeding aside from the instant one has been commenced in this case. The docket also reflects that an Order of Final Decree was generated on February 18, 1994 notwithstanding that on January 28, 1994, the debtor commenced this adversary proceeding.[4]

In this proceeding, the debtor seeks to determine his continuing federal and state tax liability for 1979 and 1980. The IRS timely answered and subsequently moved for an order of abstention or alternatively, sum-

3. Although I am sensitive to the economic constraints involved in representing a Chapter 7 debtor and the benefit of leveraging uniform pleadings across multiple cases, I feel compelled to note that the record presented for this debtor is disturbingly sparse. But for the admirable recitation of facts by counsel for the IRS, facts, which at a minimum should have been known to the debtor and included in the complaint, would not have been in the record. For example, two of the credits that were posted were not listed in the complaint. Compare Compl. ¶ 10 to Hightower Decl. at 11. In addition, the IRS has conceded that in April 1981 the debtor tendered $5,600 which payment, after a failed attempt to

return because the debtor's tax return listed no tax liability, was posted to the Debtor's account. *Id.* at 4 n. 3. On August 22, 1983, days before the agent concluded that taxes were owed for the two years, another check was mailed to the debtor. *Id.*

4. The inadvertent closing of this case does not strip me of jurisdiction. *In re Cain,* 142 B.R. 785, 788 (Bankr.W.D.Tex.1992) Fortunately, the original file was not sent to its final resting place. Accordingly, counsel for the debtor is directed to submit an Order vacating the Order of Final Decree.

mary judgment. In short, the IRS contends that abstention is warranted since this is a no-asset case and that no other parties are affected by this proceeding. Alternatively, the IRS urges that the taxes are non-dischargeable as a matter of law as a result of the assessment of a civil fraud penalty under 26 U.S.C. § 6653(b).[5] In response, the debtor disputes that he acted either in a fraudulent manner or with actual intent to evade taxes when they filed their tax returns for 1979 and 1980. He also argues that the bankruptcy court is the proper forum to determine the dischargeability of the tax debts notwithstanding that he is unable to make a distribution to his pre-petition creditors.

## II.

### A. Abstention

█ The IRS does not challenge the fact that Section 505 of the Bankruptcy Code gives me the discretionary authority to fix and determine the legality of a tax, fine or penalty, or addition to a tax owed by the debtor. *See* 11 U.S.C. § 505(a)(1); *In re Galvano,* 116 B.R. 367, 372 (Bankr.E.D.N.Y. 1990); *accord In re Continental Airlines, Inc.,* 149 B.R. 76, 84 (D.Del.1993), *aff'd in part, rev'd in part,* 8 F.3d 811 (3d Cir.1993) (Table), *cert. denied,* — U.S. —, 114 S.Ct. 1297, 127 L.Ed.2d 650 (1994); *In re Starnes,* 159 B.R. 748, 750 (Bankr.W.D.N.C.1993); *In re Smith,* 122 B.R. 130, 133 (Bankr.M.D.Fla. 1990); *In re Hunt,* 95 B.R. 442, 445 (Bankr. N.D.Tex.1989). This authority, however, is not unrestricted. *Continental Airlines,* 149 B.R. at 84. Code § 505(a)(2)(A) expressly

precludes a bankruptcy court "from reviewing any determination of a debtor's tax liability where that liability has already been contested or adjudicated." *Galvano,* 116 B.R. at 372 (a policy of Section 505 is to "ensure the finality of determinations of tax liability reached prior to Bankruptcy"). Similarly, Code § 505(a)(2)(B) places certain limitations on the bankruptcy court's authority to adjudicate the right of a bankruptcy estate to a tax refund. *See In re American Motor Club, Inc.,* 139 B.R. 578, 580 (Bankr.E.D.N.Y.1992). Within these parameters, however, bankruptcy courts have broad authority to review any kind of tax attributable to the estate, both federal and state. *American Motor,* 139 B.R. at 580 n. 2 (listing cases and various types of taxes); *But cf. Brandt–Airflex Corporation v. Long Island Trust Company, N.A. (In re Brandt–Airflex Corporation),* 843 F.2d 90 (2d Cir.1988) (citing S.Rep. No. 95–989, 95th Cong. 2d Sess. 67, 1978 U.S.Code Cong. & Admin.News 5787) (bankruptcy court lacks jurisdiction to determine tax liabilities of non-debtors).

█ In determining whether to exercise the authority provided in § 505(a)(1),[6] courts have increasingly focused on a list of factors, balancing those that are significant with respect to the circumstances of the particular case. These factors include:

1) The complexity of the tax issues to be decided;

2) The need to administer the bankruptcy case in an orderly and efficient manner;

3) The burden on the Bankruptcy Court's docket;

---

5. Counsel for both sides are entangled in numerous adversary proceedings in different cases involving these same issues and motions. For the sake of judicial as well as adversarial economy, the parties agreed to stay any prosecution of similar proceedings pending resolution of this motion as well as a similar one in another adversary proceeding. To that end, I am releasing, concurrent with this one, an opinion which denies a motion for summary judgment where the amount of the tax liability is not at issue and where the stipulated assessment includes a civil fraud penalty. *See Anthony T. Stodut and Neiza Stodut v. The Internal Revenue Service and The New York State Department of Taxation and Finance (In re Stodut),* 181 B.R. 751 (Bankr. S.D.N.Y.1995).

6. The IRS's abstention request is also grounded in 28 U.S.C. § 1334(c)(1). *See* Govt's Mem. Supp. at 5. This statute, authorizes a federal court to abstain from hearing a particular matter "in the interest of justice," or in the "interest of comity with State courts or respect for state law." 28 U.S.C. § 1334(c)(1) I recognize that some courts in other jurisdictions have abstained from fixing the amount of a tax obligation under the authority of this statute. I am less inclined towards this view and will refer to the specific provision of the Bankruptcy Code, i.e. § 505, in order to decide whether to abstain from such disputes. *See In re Smith,* 122 B.R. 130, 132 (Bankr.M.D.Fla.1990).

4) The length of time required for trial and decision;

5) The asset and liability structure of the debtor;

6) The prejudice to the debtor relative to the prejudice to the taxing authority from inconsistent assessments;

*See Galvano,* 116 B.R. at 372 (abstained) (citing *In re Hunt,* 95 B.R. 442, 445 (Bankr. N.D.Tex.1989) (conditionally abstained); *accord In re St. John's Nursing Home, Inc.,* 169 B.R. 795, 804 (D.Mass.1994), *aff'g* 154 B.R. 117 (Bankr.D.Mass.1993) (abstained); *In re Queen,* 148 B.R. 256, 259 (S.D.W.Va. 1992), *aff'd,* 16 F.3d 411 (4th Cir.1994) (Table) (abstained); *In re Universal Life Church, Inc.,* 127 B.R. 453 (E.D.Cal.1991), aff'd, 965 F.2d 777 (9th Cir.1992) (abstained); *In re Building Technologies Corp.,* 167 B.R. 853, 858 (Bankr.S.D.Ohio 1994); *In re AWB Associates, G.P.,* 144 B.R. 270, 276 (Bankr. E.D.Pa.1992) (did not abstain); *In re 499 W. Warren Street Associates,* 143 B.R. 326, 329 (Bankr.N.D.N.Y.1992) (did not abstain); *In re Continental Airlines, Inc.,* 138 B.R. 430, 434 (Bankr.D.Del.1992) (did not abstain), *rev'd on other grounds,* 149 B.R. 76 (D.Del. 1993), *aff'd in part, rev'd in part,* 8 F.3d 811 (3d Cir.1993) (Table), *cert. denied,* —— U.S. ——, 114 S.Ct. 1297, 127 L.Ed.2d 650 (1994).

By employing this array of factors, courts are better able to optimize the goals and constraints of Code § 505, as well as the other, provisions of the Bankruptcy Code. Congress drafted this provision to protect the interests of *both* debtors and creditors. *Smith,* 122 B.R. at 133–34. One goal of this provision is to protect the creditor body "from the dissipation of an estate's assets which could result if creditors were bound by a tax judgment which a debtor, due to its ailing financial condition, failed to contest." *Galvano,* 116 B.R. at 372 (citing *In re Northwest Beverage, Inc.,* 46 B.R. 631 (Bankr.

N.D.Ill.1985); *In re Fiedel Country Day School,* 55 B.R. 229, 231 (Bankr.E.D.N.Y. 1985); *accord* (*In re Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir.1969) (citing similar concerns under the Bankruptcy Act)). Another purpose is to eliminate a potential obstacle to the orderly administration of a bankruptcy case. *In re Diez,* 45 B.R. 137, 139 (Bankr.S.D.Fla.1984) (citing *Cohen v. United States,* 115 F.2d 505 (1st Cir.1940) ("[§ 505's] purpose was to afford a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings might delay conclusion of the bankruptcy estate."); *accord American Motor Club,* 139 B.R. at 581 (citations and quotations omitted). The orderly administration of a case serves both the creditor body's interest in receiving a prompt distribution as well as a debtor's interest in a prompt discharge from any properly dischargeable debt.

That said, it is clear that Congress never intended to create a second tax adjudication system. *Id.* at 584 (citing *Brandt–Airflex,* 843 F.2d at 96 (internal quotations omitted)); *Galvano,* 116 B.R. at 372–73 (citations omitted). Reflecting this concern, some courts have adopted a bright line rule of abstaining from reviewing tax disputes in cases where there will be no distribution to creditors. *See Starnes,* 159 B.R. at 750 (citing *In re Diez,* 45 B.R. 137, 138 (Bankr.S.D.Fla.1984); *In re Parsons,* 153 B.R. 585, 587 (M.D.Fla. 1993) (citing *In re Kaufman,* 115 B.R. 378, 379 (Bankr.S.D.Fla.1990)). These decisions conclude that no bankruptcy purpose is served by a bankruptcy court adjudicating tax disputes unless the interests of the creditors would be furthered, which occurs only if the creditor body will receive a distribution. Any other rule, these opinions suggest, would lead to wide-scale forum shopping.[7] *See Starnes,* 159 B.R. at 751; *Diez,* 45 B.R. at

---

**7.** The IRS also argues that the debtor's primary motive in this proceeding is to "set up" a default situation, "thereby providing the debtor with a windfall discharge from tax liabilities which are non-dischargeable as a matter of law." (Mem. Supp.Mot. at 13). This concern does not trouble me since the vacatur of an entry of default can be easily had where the circumstances warrant it. *In re Roth,* 172 B.R. 777 (Bankr.S.D.N.Y.1994) Moreover, Fed.R.Civ.P. 55(e) prohibits the entry

of a default judgment against the United States unless the plaintiff establishes a right to the relief by evidence satisfactory to the court. *See Marziliano v. Heckler,* 728 F.2d 151, 157–58 (2d Cir. 1984) Although a hearing may not always be necessary where the IRS fails to answer in this type of proceeding, the IRS will *at a minimum* receive notice of the presentment of a default judgment and an opportunity to object to the presented order. *See Id.*

139. I respectfully disagree with this overly broad interpretation of § 505. *Smith*, 122 B.R. at 133.

■ At the outset, I am troubled by a rule of law which requires me to apply rotely a doctrine which the Supreme Court has made clear must be applied with restraint. *See New Orleans Public Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) ("Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred."). I am also disinclined to employ a rule of law which rigidly eliminates a statutory right expressly enacted by Congress. Had Congress wanted to except a large segment of the debtor population from this statutory right, it would have included another subsection to § 505 which excludes from review tax disputes in no-asset cases.

Most importantly, however, this bright line rule fails to properly weigh the significance of a bankruptcy discharge to the honest and deserving debtor. As one court recently noted in the context of a similar dispute involving post-confirmation Chapter 11 debtors: ("Even though the IRS will not be paid out of the Debtor's plan, the threat of a speculative tax liability will hang perilously like the sword of Damocles over them as they attempt to reorganize their debt.") *In re Huddleston*, 1994 WL 764193, *7 (Bankr.W.D.La. Dec. 2, 1994); *But cf. Charles E. Wood and Gretta D. Wood v. U.S. (In re Wood)*, 1994 WL 759753 (Bankr.N.D.Ga. Nov. 21, 1994) (Court abstained from fixing the amount of the debt but set a trial with regard to the issue of dischargeability). This concern is equally applicable to deserving Chapter 7 debtors who invoke the protection of the Bankruptcy laws in order to obtain an economic fresh start. Consequently, I will decide on a case-by-case basis using the previously listed factors whether abstention is appropriate. *Hunt*, 95 B.R. at 445; *accord In re Super Van, Inc.*, 161 B.R. 184, 193 (Bankr. W.D.Tex.1993) ("An abuse of discretion would occur ... were a court to decline to hear a matter without having balanced the countervailing interests of the estate's right to invoke the statute in the first place against the interests of the taxing authority, and the interest of the court's own docket."); *In re Anderson*, 171 B.R. 549, 554 (Bankr.W.D.Va. 1994) (abstention in a no-asset Chapter 7 case is inappropriate notwithstanding that a discharge had issued and the IRS had not filed a proof of claim.).

■ Applying these factors here, I find that abstention in the instant adversary proceeding is inappropriate. First, as will soon be more fully articulated, the complexity of the tax issues to be decided amounts to nothing more than a simple accounting exercise. Second, once this adversary proceeding is disposed of (including the dispute with New York State), this case can be properly closed. Third, the bankruptcy court's docket, although challenged, is experiencing a welcomed lull relative to the crisis that existed just several months ago. *cf. In re Millsaps*, 133 B.R. 547, 555 (Bankr.M.D.Fla.1991) (where the court's docket being "in crisis" was an additional factor weighing in favor of abstaining from fixing amount of non-dischargeable debt). Fourth, I see no reason why a trial and decision can not be had in this Court sooner than were I to abstain since I am unaware of any pending judicial proceeding to which I could defer. *Smith*, 122 B.R. at 134; *accord Matter of Huddleston*, 107 B.R. 102, 103 (Bankr.E.D.La.1989); *In re Witte*, 92 B.R. 218, 223 (Bankr. W.D.Mich.1988). The fifth consideration, although it supports the IRS's request, is insufficient standing alone to warrant abstention. Lastly, I find that the relative prejudices tip in favor of the debtor since the possibility for an inconsistent tax assessment is not possible here while an erroneous ruling on the dischargeability of those debts still exists. On balance, then, the circumstances of this case tip in favor of my hearing this proceeding.

### B. *Summary Judgment*

■ Having determined that abstention is not warranted, I must next decide whether the IRS assessments (including the civil fraud penalties) are sufficient as a matter of law to fix the amount owed by the debtor and to render the tax debts non-dischargeable. As to the latter issue, I am releasing today

an opinion in another proceeding wherein I discuss why an IRS assessment of a civil fraud penalty does not render a tax debt non-dischargeable as a matter of law. *Stodut,* 181 B.R. 751. That ruling applies with equal force here and requires me to deny the motion for summary judgment on this ground. It does not, however, dispose of the issue as to the amount of the tax debts owed by the debtor, an issue which I find ripe for partial summary judgment.

Federal Rule of Civil Procedure 56(c), made applicable here by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, courts must determine if there are any factual issues to be tried, while at the same time, resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In addition, as Chief Judge Lifland recently discussed:

> "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the non-moving party's case." *Gallo v. Pudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). " '[T]he mere possibility

that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.' " *Ansam Assocs. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 447 (2d Cir.1985) (quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980)). As Rule 56(e) of the Federal Rules of Civil Procedure specifically states, a "party may not rest upon the mere allegations or denials of [an] adverse party's pleadings, but ... must set forth concrete particulars," and bring to the Court's attention some affirmative indication that their version of relevant events is not a meritless allegation. *See Also SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978).

*Shugrue v. Chemical Bank, Inc., (In re Ionosphere Clubs, Inc.,* 177 B.R. 198, 202 (Bankr. S.D.N.Y.1995))

 Applying these principles here, the debtor has done nothing, let alone set forth concrete particulars, to overcome the IRS's convincing presentation that the amounts owed are fixed as a matter of law. It is well settled that an IRS assessment "is presumed to be correct, and the burden of overcoming this presumption is on the tax-payer." *U.S. v. Barretto,* 708 F.Supp. 577, 579 (S.D.N.Y. 1989) (citations omitted); *Carter v. U.S.,* 717 F.Supp. 188, 191 (S.D.N.Y.1989) Fundamental fairness, including the goal of avoiding inconsistent tax liabilities for otherwise similarly situated debtors and non-debtors, requires that this rule of law be as respected in this bankruptcy proceeding as it is outside of this proceeding. Since the IRS has placed an assessment in evidence and the debtor has failed to come forth with any evidence that demonstrates the existence of a genuine issue of material fact, partial summary judgment is appropriate to fix the minimum amount [8] of the tax liabilities.

---

**8.** Although the debtor will not be permitted to challenge the amount of the tax debts as set forth by the assessment, there is a limited factual gap between the assessment and the amounts claimed due and owing in this motion. For example, the amounts originally assessed totalled to $24,510.88 for 1979 and $24,562.52 for 1980. IRS 13(h) Stmt at ¶¶ 6–7. The IRS, however,

asserts in this motion that the unpaid federal income tax liabilities is $49,040 for 1979 and $52,006.57 for 1980. IRS 13(h) Stmt at ¶¶ 8–9. Unless the IRS can bridge the gap between these two numbers, the lower amount shall control. Without a doubt, however, this gap will either have to be resolved or tried.

Counsel for the debtor is directed to SETTLE ORDER consistent with this decision.