In re ONONDAGA PLAZA
MAINTENANCE CO.,
INC., Debtor.

Bankruptcy No. 96–62930.

United States Bankruptcy Court,
N.D. New York.

Feb. 19, 1997.

Stephen Lance Cimino, Syracuse, NY, for Debtor.

John D. Stone, Assistant Corporation Counsel, Syracuse, NY, for City of Syracuse.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court considers herein the motion filed on October 7, 1996, on behalf of Onondaga Plaza Maintenance Co., Inc. ("Debtor") seeking a determination of tax liability pursuant to § 505(a) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Opposition to the motion was filed on behalf of the City of Syracuse ("City") on October 30, 1996.[1]

The motion was heard on November 5, 1996, at the Court's regular motion term in Syracuse, New York. Following oral argument, the matter was submitted for decision that date.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(A) and (O).

### FACTS

Debtor filed a voluntary petition ("Petition") seeking relief pursuant to Chapter 11 of the Code on June 19, 1996, allegedly to stay a tax foreclosure action by the City. Since that time Debtor has continued in the operation and management of its business as a debtor-in-possession pursuant to Code §§ 1107 and 1108.

Debtor is the owner of a commercial building located at 306 South Salina Street in the City of Syracuse, County of Onondaga, State of New York ("Property"). Debtor purchased the Property in 1995 allegedly for $1.00, subject to outstanding real property tax liability of approximately $157,832. In the schedules accompanying its Petition, the Debtor listed the City as its only creditor with a claim of approximately $300,000. On November 8, 1996, the City filed a proof of claim in the amount of $294,666.76 for 1992–1996/97 taxes and vault charges. There are presently pending in state court tax proceedings under Article 7 of the New York Real Property Tax Law ("NYRPTL") for tax years 1991, 1992, 1994, 1995 and 1996/97. With the exception of the 1996/97 proceeding, all were commenced by the Debtor's predecessor-in-interest and assigned to the Debtor at the time of the transfer of the Property.[2] No grievance seeking assessment reductions was filed by the Debtor's predecessor-in-interest for tax year 1993 allegedly because of ongoing negotiations with the City at the time. A grievance was filed for the 1994/95 tax year and an Article 7 proceeding commenced by the filing of a petition pursuant to NYRPTL § 704. However, because the petition was not timely filed and served the matter was dismissed pursuant to NYRPTL § 702.

### ARGUMENT

Debtor contends that the review of the 1994/95 tax assessment by the Syracuse Assessment Board of Review ("Assessment Board") was not an adjudication "by a judicial or administrative tribunal of competent jurisdiction" and, therefore, Debtor is not precluded from seeking relief pursuant to Code § 505(a). The City, however, asserts that the Assessment Board is a quasi-judicial administrative review board with the responsibility for making a final determination with respect to assessments based upon evidence presented at an administrative hearing.

---

1. In addition to opposing Debtor's motion, the City also filed a cross-motion seeking relief from the automatic stay pursuant to Code § 362(d)(3)(A) and (B). The cross-motion was heard on November 5, 1995, and adjourned to November 19, 1996, in order to allow the Debtor an opportunity to respond. Following oral argument on November 19, 1996, the matter was submitted for decision. By letter dated January 17, 1997, the City withdrew its cross-motion without prejudice.

2. According to a letter from Debtor's counsel, dated January 14, 1997, the trial of the tax proceedings in state court was commenced on December 3, 1996, and completed on December 5, 1996.

The City does not dispute that there was no adjudication of the assessment of the Property for the year 1993. However, the City asserts that Code § 505(a) is discretionary and any determination made by this Court would not inure to the benefit of the unsecured creditors. The City argues that the "policy and purpose of Code § 505 is to protect creditors from the dissipation of the estate assets ...". The City takes the position that any determination by this Court would only benefit the Debtor if it was successful in reducing the assessment on the Property.

## DISCUSSION

■ Code § 505(a) sets forth certain parameters within which this Court may determine the amount or legality of any tax. Statutorily, the Court is without authority to make a determination if the amount or legality of the tax was "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case ...". Code § 505(a)(2)(A); *see In re Galvano*, 116 B.R. 367, 371–372 (Bankr.E.D.N.Y.1990).

■ There is no dispute that there was no adjudication concerning the assessment of the Property for 1993. The question remains whether the review by the Assessment Board of the tax assessment for 1994/95 constituted an adjudication by a judicial or administrative tribunal. In support of its position that there has not been any such adjudication, Debtor relies on *In re Ledgemere Land Corp.*, 135 B.R. 193 (Bankr.D.Mass.1991). In that case, the court examined the assessment process applied under Massachusetts law. The court noted that under state law the board of assessors was not authorized to hold a hearing prior to rendering its decision with respect to the debtor's abatement application. *Id.* at 197. The court found that although the taxes had been "contested" by the debtor, there had been no hearing. *Id.* The court noted that "[a]t the heart of our judicial system is the requirement that a party desirous of contesting a matter be afforded a hearing." *Id.* The bankruptcy court concluded that since state law did not provide the debtor with a hearing, it had jurisdiction

pursuant to Code § 505 to adjudicate the tax issues raised by the debtor. *Id.* at 198.

The City takes the position that in New York the Assessment Board functions as a quasi-judicial body and the hearing held with respect to the 1994/95 tax assessment constituted an adjudication of the Debtor's tax liability for that year despite the fact that Debtor's appeal of the decision was untimely and, therefore, dismissed. The City directs the Court to the facts found in *In re El Tropicano, Inc.*, 128 B.R. 153 (Bankr. W.D.Tex.1991). In that case, the court examined the administrative and judicial review procedure applied under Texas law in connection with real property assessments. *See id.* at 158. It is the City's contention that New York's assessment review procedures are similar to those considered by the court in *El Tropicano*.

Under Texas law a property owner is entitled to file a written protest with the appraisal review board. *Id.* He/she is also able to appear before the board in person or by affidavit and is entitled to offer evidence or argument. *Id.* If dissatisfied with the board's determination, the owner is also entitled to seek *de novo* review by a state court. *Id.*

In *El Tropicano* the debtor protested the valuation of the property but failed to challenge the determination of the appraisal review board. *See id.* at 159. However, the bankruptcy court found that as long as the debtor had had a "full and fair opportunity to both argue its version of the facts and to seek court review of any adverse findings", there had been an adjudication within the meaning of Code § 505(a)(2). *Id.* at 160. The bankruptcy court, therefore, concluded that adjudication before the appraisal review board precluded it from relitigating the issue of the amount or legality of the taxes. *Id.*

This Court has reviewed both of these cases and has also considered the analysis in *In re Ishpeming Hotel Co.*, 70 B.R. 629 (Bankr.W.D.Mich.1986). The court in *Ishpeming* analyzed Michigan tax law which required that a taxpayer contest the assessed valuation before the local board of review. *See id.* at 632. Under state law the board,

acting in a quasi-judicial capacity, was authorized "to administer oaths, take testimony, etc. and, on sufficient cause being shown, to correct the assessment ...". *Id.* The bankruptcy court concluded that it was without authority to consider the tax assessment previously examined by the local board of review. *Id.*

The Court has found no case to address this particular issue based on New York State Real Property Tax Law.[3] Case law does indicate that the Assessment Board is considered "quasi-judicial" and has the responsibility of making findings of fact and applying the law before coming to a fair judgment in connection with complaints filed contesting an assessment. *See 700 Shore Road v. Board of Assessment Review,* 70 Misc.2d 822, 824, 335 N.Y.S.2d 114, 117 (N.Y.Sup.1972). Under New York law the Assessment Board is empowered to hear and determine complaints in relation to real property assessments. *See* NYRPTL § 102. NYRPTL § 524 provides that complaints alleging that the assessment is "excessive, unequal or unlawful" may be filed with the assessor prior to the hearing of the Assessment Board or with the Assessment Board at the scheduled hearing or any adjourned hearing. Pursuant to NYRPTL § 525(2), the Assessment Board "may administer oaths, take testimony and hear proofs in regard to any complaint and the assessment to which it relates." The Assessment Board may also require that the complainant or his agent or representative appear at the hearing to be examined. *See* NYRPTL § 525(2). Following the hearing, the complainant is entitled to be given notice of the Assessment Board's determination. *See* NYRPTL § 525(4). The notice is to include the statement "If you are dissatisfied with the determination of the board of assessment review, you may seek judicial review ...". *See* NYRPTL § 525(4). It is also interesting to note that in the event that the Assessment Board fails to meet for the purposes of hearing complaints, the county treasurer, the chairman of the county legislative body and the clerk of the county legislative body are required to hold a hearing on any complaints and to determine the assessment of the real property. *See* NYRPTL § 527.

Counsel for the Debtor has not provided the Court with any evidence that would indicate that the Assessment Board failed to comply with the above-referenced procedures. The fact that Debtor's petition in connection with the assessment for the 1994/95 tax year was subsequently dismissed by the state court as untimely does not now entitle the Debtor to resurrect the issues of amount and legality of the assessment for consideration by this Court. Unlike the situation in *Ledgemere,* it is clear that New York law does provide the property owner with a full and fair opportunity for a hearing by the Assessment Board. Therefore, the Court finds that the assessment for the 1994/95 tax year was contested and adjudicated by a "judicial or administrative tribunal of competent jurisdiction." Accordingly, the Court is without authority to review it.

Having reached this conclusion, the Court must still address whether to make a determination of the Debtor's tax liability for 1993 since the parties agree that it was not previously contested. The Court's authority to do so is discretionary. *See 499 W. Warren Street,* 143 B.R. at 329 (citations omitted). "Congress never intended to create a second tax adjudication system" in enacting Code § 505. *In re D'Alessio,* 181 B.R. 756, 760 (Bankr.S.D.N.Y.1995). Therefore, it is encumbent upon the Court to assure itself that the legislative purpose for drafting this provision, namely to protect the interests of both debtors and creditors, *see id.,* is met. Creditors are entitled to protection from the "dissipation of an estate's assets" in the event that the debtor failed to contest the legality and amount of taxes assessed against it. *Id.* Having the bankruptcy court adjudicate the matter also may afford an alternative forum for proceedings that might otherwise delay the orderly administration of the case and distribution to the debtor's creditors. The

---

**3.** The issue was not raised in *In re Tippp Hill Associates,* Case No. 95–61390, 1996 WL 756503 (Bankr.N.D.N.Y. July 31, 1996). In *In re 499 W. Warren Street Associates, Ltd. Partnership,* 143 B.R. 326 (Bankr.N.D.N.Y.1992) the debtor had taken no action whatsoever to have the tax assessments reviewed when it sought relief pursuant to Code § 505.

courts generally consider a number of factors, including the complexity of the tax issue, the need to administer the bankruptcy case in an expeditious fashion, the burden on the bankruptcy court's docket, the length of time necessary to conduct the hearing and to render a decision thereafter, the asset and liability structure of the debtor and the potential prejudice to the debtor and the taxing authority. *See In re D'Alessio,* 181 B.R. 756, 759–60 (Bankr.S.D.N.Y.1995) (citations omitted).

There is nothing terribly complex about determining the valuation of the Property for assessment purposes. Indeed, this Court made similar determinations in both *499 W. Warren Street* and *Tippp Hill Associates.* Furthermore, any burden on the Court's docket and the length of time necessary to conduct the hearing would be minimal. It is the asset and liability structure of the Debtor which concerns the Court. Not only is the Debtor a **single asset** real estate case, it also has only a **single creditor,** the City of Syracuse. There are no unsecured creditors awaiting distribution by the Debtor. Under similar circumstances, the courts generally have abstained from reviewing tax disputes. *See In re Shapiro,* 188 B.R. 140, 144 (Bankr.E.D.Pa.1995) (citations omitted).

For example, in *In re Swan,* 152 B.R. 28 (Bankr.W.D.N.Y.1992), the debtor's only creditors were the mortgage holders on her residence and the taxing authorities, including the Internal Revenue Service. The bankruptcy court, citing to *El Tropicano,* declined to exercise its discretion under Code § 505. *See id.* at 30. The court pointed out that the debtor had exercised her rights in challenging the tax claims but had failed to file the documents necessary to appeal the decision of the Tax Bureau in a timely fashion. *Id.* The court noted that "[w]hat the Debtor is requesting in this case is nothing more than an attempt to gain a second bite of the apple, which would only benefit her and not her creditors; a result never intended under Section 505." *Id.,* citing *El Tropicano,* 128 B.R. at 161.

In the matter now before this Court, it is apparent that the Debtor's only reason for filing its Petition was to stay the tax foreclosure of the Property by the City. Like the situation in *Swan,* there has been active involvement in the assessment review process concerning the Property. In fact, the parties have indicated that they anticipate a decision by the state court with respect to the years 1991, 1992, 1994, 1995/96 and 1996/97 in approximately eight weeks. Whether or not the Debtor will be able to reorganize will have to await the determination by the state court. This Court is of the opinion that adjudicating the 1993 tax assessment under these circumstances would not expedite any distribution to unsecured creditors, since there are none, and, therefore, would not advance the purposes for which Code § 505 was enacted.

Based on the foregoing, it is hereby

ORDERED that Debtor's motion seeking review of the assessment of the Property for the 1993 tax year is denied; and it is further

ORDERED that Debtor's motion seeking review of the assessment of the Property for the 1994/95 tax year is also denied.