In re Anthony T. and Neiza
STODUT, Debtors.

Anthony T. and Neiza STODUT,
Plaintiffs,

v.

The INTERNAL REVENUE SERVICE
and The New York State Department
of Taxation and Finance, Defendants.

Bankruptcy No. 93–B–22318 (JJC).
Adv. No. 94–5003A.

United States Bankruptcy Court,
S.D. New York.

May 2, 1995.

Kurtzman Haspel & Stein by Joseph Haspel, Spring Valley, NY, for Stoduts.

U.S. Atty. for S.D.N.Y. by Marianne O'Toole, New York City, for I.R.S.

Atty. Gen. for State of New York[1] by Terri Altamura and David Cook, New York City, for New York State Dept. of Taxation and Finance.

## DECISION ON INTERNAL REVENUE SERVICE'S MOTION FOR ABSTENTION OR, ALTERNATIVELY, SUMMARY JUDGMENT

JOHN J. CONNELLY, Bankruptcy Judge, Sitting by Special Designation.

The Internal Revenue Service ("IRS") asks me to abstain from hearing this adversary proceeding commenced by Chapter 7 debtors, Anthony and Neiza Stodut to determine their continuing federal tax liability for the years 1985 and 1986. Alternatively, the IRS moves for summary judgment contending that a pre-petition stipulation signed by the IRS and the Stoduts fixes the amount owed for those years and establishes the elements necessary to declare the tax debts non-dischargeable as a matter of law. For the following reasons, the request for abstention and the motion for summary judgment are denied.

1. As counsel for the Stoduts and New York State (the other defendant) have agreed to prosecute their litigation on a parallel course, I have limited the factual recitation here to only those involving the IRS and the Stoduts.

## I.

With one exception discussed below, the salient facts for purposes of this motion are not in dispute.[2] On April 21, 1986, the Stoduts, owners of a retail liquor store known as NTJ Liquors, Inc., filed a joint federal income tax return for 1985. IRS 13(h) Stmt at ¶ 3. On July 11, 1988, the Stoduts filed a joint federal income tax return for 1986. *Id.* at ¶ 4. In November 1989, an IRS agent commenced an examination of the Stodut's 1985 and 1986 tax returns. *See Id.* at ¶ 5. Roughly one year later, the IRS communicated by letter to the Stoduts that additional amounts were being assessed for those tax years. *See Id.* at ¶ 6. These additional assessments were based upon a theory that the Stoduts were receiving a "constructive dividend from their solely owned corporation" and were therefore underreporting their income. *See* IRS 13(h) Stmt at ¶ 6; Herring Decl. at Ex. E p 2. The IRS also suggested that the Stoduts had "claimed false exemptions." IRS 13(h) Stmt at ¶ 6.

Upon these theories, the IRS attributed $89,669 in "Other income" to the Stoduts for 1985 and assessed $31,438 in additional tax and $23,579 in penalties based upon this assessment. Herring Decl. at Ex. C.[3] Similarly, the IRS calculated $70,132 in "Other income" for 1986 and assessed $31,171 in additional tax and $25,440 in penalties. *Id.*[4] A portion of the penalty assessments in both

years resulted from the IRS's belief (which the Stoduts dispute) that the alleged underreported income and improper exemptions represented, in part, fraudulent conduct. *See Id.* (Document titled "Explanation of the Civil Fraud Penalty" which allocates part of the 1986 additional tax to "underpayment excluding fraudulent issues" and the remainder to "underpayment due to fraud.").

The Stodut's ultimately challenged the assessments with the Regional Appeals Office of the IRS. IRS 13(h) Stmt at ¶ 7. While the appeal was pending, however, the IRS and the Stoduts voluntarily reached a settlement agreement which eliminated the need for the appeal. *Id.* at ¶ 8. In August 1992, the Stoduts signed a standard IRS form numbered 870–AD whereby they consented to a reduced assessment of taxes, interest and penalties.[5] *Id.* at ¶ 8; *See* Herring Decl. at Ex. F (form, hereinafter referred to as "Waiver and Acceptance," titled "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment.") This Waiver and Acceptance traveled the appropriate channels at the IRS and was subsequently approved in September, 1992. *Id.*

In short, the record reflects that the Stoduts consented to an assessment for 1985 of: $16,817 in additional income tax; a $16,206.98 penalty pursuant to I.R.C. § 6653(b);[6] a

---

**2.** The facts are derived primarily from two documents: the first is entitled "Government's Statement Pursuant To Local Bankruptcy Rule 13(h)" (hereinafter "IRS 13(h) Stmt"); the second is entitled "Statement of Outstanding Material Issues of Fact Pursuant To Local Rule 13(h)" (hereinafter "Stodut 13(h) Stmt"). As required in this district, the IRS has submitted a "short and concise statement of the material facts as to which [it] contends there is no genuine issue to be tried." *See* Local Bankruptcy Rule 13(h). Similarly, the Stoduts submitted a short and concise statement listing what they contend are genuine issues of fact requiring a trial. *See Id.* The Stodut 13(h) Stmt does not dispute all of the facts set forth in the IRS 13(h) Stmt; consequently, the uncontroverted facts are deemed to be admitted. *Id.*

**3.** These amounts are above the $1,016 liability listed on the Stoduts' 1985 tax return. *Id.*

**4.** The Stoduts declared a $15,566 tax liability in 1986. *Id.*

**5.** The Waiver and Acceptance does not expressly calculate an amount due for interest on the additional tax assessments for either 1985 or 1986. It does, however, include algorithms to compute penalties under former 26 U.S.C. ("I.R.C.") § 6653(b)(1)(B) and § 6653(b)(2) which are pegged to the interest due on the additional tax assessments for each year. Thus, it appears that the agreement of the parties contemplated the payment of interest.

Furthermore, the documents in evidence reflect that interest as well as the penalties pegged thereto were derived after the signing of the Waiver and Acceptance but before November 2, 1992. *See* Herring Decl. at Ex A. Although the methodology employed to derive the interest for the two years is not readily discernable, this weakness in the record is not fatal since the amount of the liabilities are not at issue.

**6.** As can be surmised from the prior footnote, the components of the liabilities asserted in the IRS 13(h) Stmt do not mirror the amounts set forth in the Waiver and Acceptance (since the interest

$4,204 penalty pursuant to I.R.C. § 6661;[7] and $19,496.17 in interest. IRS 13(h) Stmt at ¶ 9. The Stoduts also consented to an assessment for 1986 of: $14,968 in additional income tax; a $16,900.16 penalty pursuant to I.R.C. § 6653(b);[8] a $3,742 penalty pursuant to I.R.C. § 6661; and $13,813.85 in interest. *Id.* at ¶ 10. Based upon this settlement, the IRS filed tax liens in July and September of 1993. *See* Herring Decl. at ¶ 14.

The Stoduts filed a voluntary Chapter 7 petition on November 24, 1993. The IRS has not filed a proof of claim in this case. On July 21, 1994, the Chapter 7 Trustee filed his report of no distribution to creditors in this case. On October 19, 1994, the clerk's office generated and served notice on a list of creditors of an Order discharging the Stoduts from all dischargeable debts. The docket reflects that no other adversary proceeding aside from the instant one has been commenced in this case; accordingly, this case is otherwise ripe for closure.

On January 6, 1994, the Stoduts commenced this adversary proceeding seeking to determine their continuing federal and state tax liability for 1985 and 1986. The IRS timely answered and subsequently moved for an order of abstention or alternatively, sum-

mary judgment.[9] In short, the IRS contends that abstention is warranted since this is a no-asset case and no other creditors are affected by this proceeding. Alternatively, the IRS urges that the taxes are non-dischargeable as a matter of law. The Stoduts individually and jointly take issue with the IRS's contention that they acted either in a fraudulent manner or with actual intent to evade taxes when they filed their tax returns for 1985 and 1986. They believe that the bankruptcy court is the proper forum to determine the dischargeability of their tax debts notwithstanding that they are unable to make a distribution to their pre-petition creditors.

## II.

### A. *Abstention*

Although the first cause of action of the complaint seeks to fix the Stoduts' tax liability for 1985 and 1986, the parties stipulation, as well as counsel's concession at oral argument, indicate that a dispute as to the amount owed no longer exists. The absence of such a dispute, in turn, obviates the need for discussion about whether abstention is appropriate.[10]

---

owed was calculated after the Stoduts signed the latter document). For example, the IRS 13(h) Stmt asserts a $16,206.98 I.R.C. § 6653(b) penalty; yet, the Stoduts consented to a $8,409 penalty pursuant to I.R.C. § 6653(b)(1) and an unliquidated penalty pursuant to I.R.C. § 6653(b)(2) equal to 50% of the interest on the additional tax assessment. To reconcile these amounts, the § 6653(b)(2) penalty would have to be $7,779.98 and the corresponding interest attributable to the additional tax assessment (as opposed to the penalties) would have to be $15,559.96.

7. In 1989, Congress altered many of the provisions of the Internal Revenue Code including the repeal of I.R.C. § 6661 and the amending of I.R.C. § 6653 into what is now I.R.C. § 6663. In this proceeding, I must apply the pre-modification provisions. For the ease of reading, I have elected throughout this decision not to refer to these provisions as "former I.R.C. § 6653" and "former I.R.C. § 6661," although these labels should be inferred.

8. Undertaking the similar exercise discussed in the prior footnote yields a breakout of the I.R.C. § 6653(b) penalty for 1986 of $11,226 pursuant

to I.R.C. § 6653(b)(1) and $5,674.16 pursuant to I.R.C. § 6653(b)(2).

9. The Stoduts initially sought the intervention of this Court to fix the amounts of the tax liability for both years. *See* Compl. at ¶ 10; Stodut 13(h) Stmt at ¶¶ 7–8 (vaguely challenging the amounts owed). At oral argument, counsel for the Stoduts conceded that the Waiver and Acceptance essentially prevents the Stoduts from now challenging the amounts owed. Accordingly, I am deeming the last two paragraphs of the Stodut 13(h) Stmt withdrawn.

10. Counsel for both sides are entangled in numerous adversary proceedings in different cases involving these same issues and motions. For the sake of judicial as well as adversarial economy, the parties agreed to stay any prosecution of similar proceedings pending resolution of this motion as well as a similar one in another adversary proceeding. To that end, I am releasing, concurrent with this one, an opinion which resolves the issue of abstention when the amount of the tax liability is not fixed. *See Eugene D'Alessio, Jr. v. The Internal Revenue Service and The New York State Department of Taxation and Finance (In re Eugene D'Alessio, Jr.),* 181 B.R. 756 (Bankr.S.D.N.Y.1995).

### B. *Summary Judgment*

Federal Rule of Civil Procedure 56(c), made applicable here by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, courts must determine if there are any factual issues to be tried, while at the same time, resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). With these principles in mind, I must decide whether the IRS has sustained its burden of proving that no material facts exist and that the 1985 and 1986 tax debts are excepted from discharge as a matter of law.

■ Section 523(a)(1)(C) of the Bankruptcy Code governs this dispute. This section provides in substance that a tax debt is excepted from discharge if the debtor either "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C); *Levinson v. United States,* 969 F.2d 260, 264 (7th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992). To succeed in this action, the IRS must prove by a preponderance of the evidence that the Stoduts *either* made a fraudulent return *or* willfully attempted in any manner to evade tax payments. *In re Lilley,* 152 B.R. 715, 720

(Bankr.E.D.Pa.1993) (citations omitted) (emphasis in the original); *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (preponderance of the evidence is the proper standard of proof in dischargeability actions). The allocation of the burden of proof to the IRS reflects the well settled rule that exceptions to discharge must be strictly construed against the creditor and liberally in favor of the honest debtor in order to further the paramount bankruptcy policy of affording an economic "fresh start." *See Grogan,* 498 U.S. at 286, 111 S.Ct. at 659 ("a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."); *In re Dyana Landrin,* 173 B.R. 307, 310 (Bankr.S.D.N.Y.1994) (citations omitted); *In re Schwartz & Meyers,* 130 B.R. 416, 421 (Bankr.S.D.N.Y.1991) (citations omitted).

The IRS urges me to find that the 1985 and 1986 tax debts are excepted from discharge as a matter of law since the penalties assessed and consented to include a fraud penalty pursuant to I.R.C. § 6653(b) [11] as well as a Substantial Understatement of Liability Penalty pursuant to I.R.C. § 6661. IRS Mem.Supp.Mot. at 10. Since fraud penalties were assessed against the Stoduts, the IRS surmises that "the facts underlying the assessment need not even be present to the court for summary judgment to be awarded." *Id.* (quoting *Carter v. United States,* 717 F.Supp. 188, 191 (S.D.N.Y.1989)). I do not agree and find *Carter* inapplicable to the remaining issue. Silently subsumed in the IRS's argument is a threshold question of whether the Stoduts are collaterally estopped, by virtue of the stipulated civil fraud penalties in the Waiver and Acceptance, from challenging the dischargeability of the debts. It is to this threshold issue that I turn.

■ The doctrine of collateral estoppel prevents a party from relitigating an issue clearly raised in a prior action and necessari-

---

11. This provision provides in pertinent part that if any portion of an underpayment of a tax is "due to fraud," an amount shall be added to the tax equal to 75 percent of that portion and 50 percent of the interest payable on that portion. I.R.C. § 6653(b)(1)

ly decided against that party or those with whom the party shares privity. *Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993) (citation omitted); *See In re Freidus,* 165 B.R. 537, 540 (Bankr.E.D.N.Y.1994) (citations omitted). The doctrine is applicable where "the party to be barred had a full and fair opportunity to raise and litigate the claim and the disposition was on the merits." *Id.* (citations omitted). "The purpose of collateral estoppel is to conserve judicial resources, avoid the cost and annoyance of multiple lawsuits and encourage reliance on adjudication." *Graham v. Internal Revenue Service (In re Graham),* 131 B.R. 275, 280 (E.D.Pa 1991), *aff'd in part, rev'd in part,* 973 F.2d 1089 (3d Cir.1992) (citing *Allen v. McCurry,* 449 U.S. 90, 92–96, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980) (other citations omitted)). Although it is applicable to bankruptcy cases in general and to dischargeability proceedings in particular, collateral estoppel is a flexible doctrine that ought never be rigidly or mechanically applied. *See Grogan,* 498 U.S. at 285, n. 11, 111 S.Ct. at 658, n. 11; *Conte,* 996 F.2d at 1400 (citations omitted).

The party invoking collateral estoppel has the burden of proving all the requisites for its application. *Freidus,* 165 B.R. at 541 (citing *In re Miera,* 926 F.2d 741, 743 (8th Cir.1991)). The elements of collateral estoppel are: first whether the issue sought to be litigated is identical to an issue decided in the prior action; second whether the issue was actually litigated in the prior litigation; and third whether the issue in the prior litigation was essential to the prior judgment. *Id.* (citations omitted); *See Conte,* 996 F.2d at 1400 (listing similar elements where dispute involves questions of New York State law). The adjudication of fact must be by a final judgment. *In re PCH Associates,* 949 F.2d 585 (2d Cir.1991); *Landrin,* 173 B.R. at 312 n. 5 (citations omitted).

In this case, there is no judgment from another court which finds that the Stoduts intended to make a fraudulent return or to willfully attempt in any manner to evade or defeat a tax. The record contains merely the initial IRS assessment and the Waiver and Acceptance. Although these pieces of evidence may be presumptively valid in litigation involving the amount of a tax debt, they are insufficient to satisfy the actually litigated element of collateral estoppel in this action.

Yet, even absent this defect, I would not find that the elements of collateral estoppel are satisfied. In reaching this conclusion, I am guided by an opinion from a neighboring bankruptcy court which denied a motion for summary judgment in a similar but more compelling factual scenario. *See Graham v. Internal Revenue Service (In re Graham),* 94 B.R. 386 (Bankr.E.D.Pa.1988) (opinion on summary judgment motion); *Graham v. Internal Revenue Service (In re Graham),* 108 B.R. 498 (Bankr.E.D.Pa.1989) (opinion after trial), *aff'd,* 131 B.R. 275, *aff'd in part, rev'd in part,* 973 F.2d 1089. In *Graham* a taxpayer, during the pendency of a Tax Court proceeding, entered into a stipulation with the IRS wherein "the deficiencies in tax and additions to tax determined therein, although not admitted, [were] uncontested ..." 973 F.2d at 1097–98 (emphasis omitted). Based upon this stipulation, the Tax Court issued a judgment which imposed a civil fraud penalty under I.R.C. § 6653(b). *Id.* at 1092.

After that taxpayer filed a bankruptcy petition, the IRS attempted to invoke the doctrine of collateral estoppel to prevent the debtor from challenging the issue of fraud in the subsequent dischargeability action. *See Graham,* 94 B.R. at 388–91. The Bankruptcy Court denied the IRS's motion for summary judgment on the grounds that the issue of fraud was not actually litigated in the Tax Court. *Id.* at 391. This ruling, as well as the Bankruptcy Court's finding that the debts were dischargeable after a trial on the merits, were affirmed on appeal to the District Court. *Graham,* 131 B.R. at 283. The Third Circuit affirmed the Bankruptcy Court's ruling on the issue of collateral estoppel and concluded that although the stipulation fixed the amount of the deficiencies it did not establish the existence of an underlying fraud. *Id.* at 1098 ("... even though the penalty imposed by the Tax Court was based on the fraud penalty 26 U.S.C. § 6653(b) authorized [sic] in cases where fraud is established, the issue of fraud was never litigated or admitted, nor was a specific factual finding concerning it made."); *accord In re Olson,* 170 B.R. 161, 168 (Bankr.D.N.D.1994) ("[T]he entry of a civil fraud penalty by the Tax

Court under I.R.C. § 6653(b), while disposing of the issue of liability, does not resolve the issues for non-dischargeability under § 523(a)(1)(C)"). The Third Circuit did, however, reverse on an issue not yet before this court, i.e. the proper burden of proof to be applied at trial.

I find the reasoning in the *Graham* opinions to be persuasive and hold that a § 6653(b) civil fraud penalty assessment, even if it is consented to in a stipulation, does not as a matter of law except a tax debt from discharge under § 523(a)(1)(C). By the same token, the § 6661 penalty assessment is similarly insufficient to except the debts from discharge at this stage of the litigation. *See In re Hedgecock*, 160 B.R. 380, 383 (D.Or. 1993). To have a preclusive effect, the stipulation must embody some indication that the parties intended to foreclose the discharge issue from future litigation.[12] *Levinson*, 969 F.2d at 264. In this case, the record is insufficient to preclude the Stoduts from challenging either of the elements of § 523(a)(1)(C).[13]

Having concluded that the Stoduts are not collaterally estopped from challenging that they made fraudulent returns for 1985 and 1986 or willfully attempted in any manner to evade or defeat these taxes, there is a question of fact which precludes the entry of summary judgment. Accordingly, the IRS's motion for summary judgment is denied.

Counsel for the Stoduts is directed to SETTLE an Order consistent with this decision.

---

12. Had the IRS presented a consent judgment rather than the Waiver and Acceptance, I would have reached the same result since the record does not contain specific findings of fact that the Stoduts made a fraudulent return or willfully attempted to evade a tax liability. *Olson*, 170 B.R. at 169–70. *Compare Graham*, 973 F.2d at 1098 (record insufficient) and *Levinson*, 969 F.2d at 264 (same) with *Freidus*, 165 B.R. at 542 (where factual record from the Tax Court proceeding established that the debtor willfully attempted to evade or defeat a tax) and *In re Lilley*, 152 B.R. 715, 721–22 (Bankr.E.D.Pa.1993)

(same, notwithstanding the absence of a § 6653(b) penalty.)

13. As a final note, although neither side raised the issue, the record also does not permit me to determine as a matter of law whether the alleged fraudulent conduct is attributable to either or both of the Stoduts. Although this is an issue peculiar to joint cases, this is a factual issue of great importance here. *See* I.R.C. § 6653(b)(3) ("In the case of a joint return, this subsection shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse.")