PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

IN RE: MICROSOFT CORPORATION
ANTITRUST LITIGATION

(Kloth, et al. v. Microsoft Corp.;
Netscape Communications Corp. v.
Microsoft Corp.; Sun Microsystems,
Inc. v. Microsoft Corp.; Burst.com,
Inc. v. Microsoft Corp.) (MDL No.
1332)

No. 03-1817

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-00-1332-MDL, CA-00-2117-1, CA-02-2738-1, CA-02-2739-1,
CA-02-2952-1)

Argued: October 29, 2003

Decided: January 15, 2004

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Widener joined. Judge Gregory wrote a
separate opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** David Bruce Tulchin, SULLIVAN & CROMWELL,
L.L.P., New York, New York, for Appellant. John Bucher Isbister,
TYDINGS & ROSENBERG, L.L.P., Baltimore, Maryland, for

Appellees. **ON BRIEF:** Richard C. Pepperman, II, Marc De Leeuw, SULLIVAN & CROMWELL, L.L.P., New York, New York; Robert A. Rosenfeld, Matthew L. Larrabee, HELLER, EHRMAN, WHITE & MCAULIFFE, L.L.P., San Francisco, California; Michael F. Brockmeyer, Jeffrey D. Herschman, PIPER RUDNICK, L.L.P., Baltimore, Maryland; Charles W. Douglas, SIDLEY, AUSTIN, BROWN & WOOD, Chicago, Illinois; Thomas W. Burt, Richard L. Wallis, Linda K. Norman, Steven J. Aeschbacher, MICROSOFT CORPORATION, Redmond, Washington, for Appellant. Thomas M. Wilson, III, TYDINGS & ROSENBERG, L.L.P., Baltimore, Maryland; Lloyd R. Day, Jr., James R. Batchelder, Robert M. Galvin, DAY, CASEBEER, MADRID & BATCHELDER, L.L.P., Cupertino, California; Michael A. Schlanger, Kirk R. Ruthenberg, SONNENSCHEIN, NATH & ROSENTHAL, Washington, D.C.; Spencer Hosie, Bruce J. Wecker, HOSIE, FROST, LARGE & MCARTHUR, San Francisco, California; Parker C. Folse, III, Ian B. Crosby, Edgar G. Sargent, SUSMAN GODFREY, L.L.P., Seattle, Washington; Stephen D. Susman, James T. Southwick, SUSMAN GODFREY, L.L.P., Houston, Texas; Christopher Lovell, Victor E. Stewart, Jody Krisiloff, Peggy Wedgworth, LOVELL, STEWART & HALEBIAN, L.L.P., New York, New York; Stanley M. Chesley, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio; Robert Yorio, CARR & FERRELL, L.L.P., Palo Alto, California; Michael D. Hausfeld, COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C., Washington, D.C., for Appellees.

---

**OPINION**

NIEMEYER, Circuit Judge:

In 1998, the United States and several of the States filed a civil action against Microsoft Corporation in the District of Columbia for violations of the Sherman Act. The district court in that action found that Microsoft (1) illegally maintained a monopoly in the market of "licensing of all Intel-compatible PC operating systems worldwide," (2) attempted to monopolize a "putative browser market," and (3) entered into an illegal tying arrangement by bundling its Internet Explorer web browser with its Windows operating system, in viola-

tion of §§ 1 and 2 of the Sherman Act. The Court of Appeals for the D.C. Circuit affirmed, with limitations, the district court's conclusion that Microsoft illegally maintained a monopoly in the PC operating systems market but reversed the district court's other conclusions. *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001).

Based in large part on the factual findings made in that District of Columbia litigation, the plaintiffs in the cases now before this court have asserted a broad range of antitrust violations against Microsoft. On the plaintiffs' motions to foreclose Microsoft from relitigating 356 factual findings made by the district court in the District of Columbia litigation, the district court in these actions entered a pretrial order applying the doctrine of "offensive collateral estoppel" to preclude Microsoft from relitigating 350 of the factual findings. The district court made its decision about each finding by determining that the finding was "supportive of" the judgment affirmed by the Court of Appeals for the D.C. Circuit. *In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp. 2d 534, 537 (D. Md. 2002). On appeal, Microsoft contends that the standard that the district court used to apply offensive collateral estoppel to factual findings from the District of Columbia litigation was too broad, unfairly denying Microsoft an opportunity to litigate those facts in this action.

Because the "supportive of" standard is not the appropriate standard for applying collateral estoppel, we reverse and remand, directing the district court to give preclusive effect only to factual findings that were necessary — meaning critical and essential — to the judgment affirmed by the D.C. Circuit.

I

Several competitors of Microsoft — Netscape Communications Corporation, Sun Microsystems, Inc., Burst.com, Inc., and Be Incorporated — as well as a class of consumers commenced these actions against Microsoft for various violations of the antitrust laws and related laws, and in April 2002 these actions were transferred to the District of Maryland under multidistrict litigation procedures. *See* 28 U.S.C. § 1407.

In August 2002, several of the plaintiffs filed pretrial motions under Federal Rule of Civil Procedure 16(c) to foreclose Microsoft,

under the doctrine of collateral estoppel, from relitigating 356 of the 412 factual findings made by the district court in the District of Columbia litigation. *See United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C. 1999). The district court granted the motions with respect to 350 of those findings. *In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp. 2d 534 (D. Md. 2002). In reaching its conclusion, the court recognized that it could foreclose Microsoft from relitigating only those facts that were "necessary to the prior judgment," *id.* at 537, but it concluded that the doctrine "is sufficiently served by requiring that a specific finding be *supportive of* the prior judgment," *id.* (emphasis added).

On Microsoft's motion, the district court certified for review under 28 U.S.C. § 1292(b) its interlocutory order, which the court characterized as a ruling that "facts found by Judge Jackson [for the District of Columbia District Court] that were *supportive of* (rather than *indispensable to*) the liability judgment against Microsoft in the government case should be given collateral estoppel effect in the cases encompassed in this MDL proceeding." By order dated July 3, 2003, we granted Microsoft leave to appeal.

II

Under the traditional rubric of *res judicata*, once a matter — whether a claim, an issue, or a fact — has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter. Judicial efficiency and finality have demanded such a policy.

The doctrine of "collateral estoppel" or "issue preclusion," which the district court applied in this case, is a subset of the *res judicata* genre. Applying collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted). To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was

actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *See id.*; *Polk v. Montgomery County, Maryland*, 782 F.2d 1196, 1201 (4th Cir. 1986) (using "necessary, material, and essential" for the third prong); *Tuttle v. Arlington County Sch. Bd.*, 195 F.3d 698, 703-04 n.6 (4th Cir. 1999) (using "critical and necessary"); *C.B. Marchant Co. v. Eastern Foods, Inc.*, 756 F.2d 317, 319 (4th Cir. 1985) (using "necessary and essential"); *see also* Restatement (Second) of Judgments § 27 & cmt. h (1982) (using "essential to the judgment," meaning that the judgment must be "dependent upon the determinations").

When a *plaintiff* employs the doctrine of collateral estoppel or issue preclusion "to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party," it is known as "offensive collateral estoppel." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979). And when a *defendant* employs the doctrine "to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant," it is known as "defensive collateral estoppel." *Id.* Recognizing a greater possibility for unfairness from the use of offensive collateral estoppel, the Supreme Court has held that in lieu of prohibiting its use altogether, district courts should be granted "broad discretion to determine when it should be applied." *Id.* at 331. But this discretion should not be exercised to permit the use of offensive collateral estoppel "where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant," particularly in several specified ways. *Id.* Thus, when exercising its discretion, a court should consider the following nonexclusive factors: (1) whether the plaintiff could have easily joined in the action against the defendant in the earlier action, (2) whether the defendant had an incentive in the prior action to have defended the action fully and vigorously; (3) whether the defendant had won litigation other than the prior action that determined the same issues or facts favorably to the defendant; (4) whether procedural opportunities are available in the pending action that were not available in the prior action. *See id.* at 331-32. In sum, the doctrine

of offensive collateral estoppel or offensive issue preclusion may be used cautiously to preclude a defendant from relitigating a fact actually found against the defendant in prior litigation when the fact was critical and necessary to the judgment in the prior litigation, so long as the plaintiff using the fact could not have easily joined the prior litigation and application of the doctrine would not be unfair to the defendant. The caution that is required in application of offensive collateral estoppel counsels that the criteria for foreclosing a defendant from relitigating an issue or fact be applied strictly. *See, e.g.*, *Jack Faucett Assocs. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984) ("The doctrine [of offensive collateral estoppel] is detailed, difficult, and potentially dangerous").

The single criterion at issue in this appeal is whether the district court correctly applied the requirement that facts subject to collateral estoppel be "critical and necessary" to the judgment in the prior litigation. While the district court correctly stated this criterion, it interpreted and applied it to foreclose relitigation of any fact that was "supportive of" the prior judgment. We believe that this interpretation changes the criterion, rendering it too broad to assure fairness in the application of the doctrine. "Supportive of" is a term substantially more inclusive than the stated criterion of "critical and necessary."

Tellingly, in describing the scope of the "critical and necessary" criterion, we have used the alternative word "essential." *See, e.g.*, *Polk*, 782 F.2d at 1201 ("necessary, material, and essential"); *C.B. Marchant*, 756 F.2d at 319 ("necessary and essential"). And all of the terms that we have used — critical, necessary, essential, and material — are words of limitation. *See* Webster's Third New International Dictionary 1510-11 (1993) (defining "necessary" to mean logically required, essential, indispensable); Random House Dictionary 1283-84 (2d ed. 1987) (defining "necessary" to mean "essential, indispensable, or requisite"). Because a fact that is "supportive of" a judgment may be consistent with it but not necessary or essential to it, the term "supportive of" is a broader term than "critical and necessary." The term "supportive of" sweeps so broadly that it might lead to inclusion of all facts that may have been "relevant" to the prior judgment. Such a broad application of offensive collateral estoppel risks the very unfairness about which the Supreme Court was concerned in *Park-*

*lane*, 439 U.S. at 330-31, and we conclude therefore that it is inappropriate.

In addition, the "supportive of" standard, when applied to offensive collateral estoppel, would foreclose further litigation of findings for which the defendant had no opportunity for appellate review in the prior litigation. *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4421, at 559 (2d ed. 2002); 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[4][b][iv], at 113, § 132.03[4][k][ii], at 123-24 (3d ed. 2003). If a trial court were to make an unnecessary or collateral finding in a case and the defendant appealed the judgment, the appellate court, in affirming the judgment, would generally not reach the unnecessary findings. Thus, such findings would evade appellate review. *See* 1B James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.443[5.-1], at 585-86 (2d ed. 1996). Yet, under a "supportive of" standard, these unnecessary or collateral findings, which are practically immune to appellate review, would still foreclose further litigation, as long as they tended generally to confirm the affirmed judgment. In contrast, when only "necessary" findings are given preclusive effect, the defendant will have received a full opportunity for litigation in the prior proceeding, including the opportunity for appellate review.

In support of its broader interpretation of "necessary," the district court cited *Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002); *Hoult v. Hoult*, 157 F.3d 29, 32 (1st Cir. 1998); and *Synanon Church v. United States*, 820 F.2d 421, 424-25 (D.C. Cir. 1987). But none of these opinions employed the district court's broadening interpretation. *See Delaware River Port Auth.*, 290 F.3d at 572 (using "necessary to support [the] judgment" in the prior action); *Hoult*, 157 F.3d at 32 (using a "'necessary component of the decision reached'" in the earlier action (quoting *Dennis v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.2d 893, 899 (1st Cir. 1984))); *Synanon Church*, 820 F.2d at 424 (using "actually and necessarily determined by a court of competent jurisdiction" in a prior proceeding).

The district court also reasoned that if "necessary" were to be construed as strictly as is suggested by "indispensable" and "essential," we could not have reached the decision that we did in *Ritter v. Mount*

*St. Mary's Coll.*, 814 F.2d 986 (4th Cir. 1987). The district court observed that the more restricted meaning would require that if there were two independently sufficient grounds for a prior decision, preclusive effect could not be given to either ground. Yet we gave preclusive effect to two independently sufficient grounds in *Ritter*.

But *Ritter* does not undermine the generally restrictive meaning of necessary. In *Ritter*, the court observed the principle that "where the court in the prior suit has determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment. Thus, collateral estoppel will not obtain as to either determination." 814 F.2d at 993. In the circumstances of that case, however, which involved no prior judgment from another proceeding but rather a prior ruling *in the same case*, we noted that "if the parties were not bound by the facts found in the very same case which they were litigating, then the judgments of courts issued during trial would become irrelevancies." *Id.* at 992. Even though we enforced an earlier factual finding applied to a motion decided later *in the same case* — essentially applying a law-of-the-case principle — we called it collateral estoppel and applied it in the exceptional circumstances of that case, where the parties were the same, the issues were the same, the facts were the same, and even the court was the same. *Id.* at 994. Indeed, the case itself was the same. *Id.* at 992-94. But when issue preclusion is considered in the context of two separate litigations, the restrictive principle recognized in *Ritter* remains viable — that if a judgment in the prior case is supported by either of two findings, neither finding can be found essential to the judgment. *Id.* at 993; *see also Tuttle*, 195 F.3d at 704; *C.B. Marchant*, 756 F.2d at 319.

## III

On remand, when the district court applies the "critical and necessary" standard to the facts found in the District of Columbia litigation, it must take care to limit application to facts that were necessary to the judgment *actually affirmed* by the D.C. Circuit. The D.C. Circuit held that Microsoft illegally maintained a monopoly in the market of "licensing of all Intel-compatible PC operating systems worldwide" through 12 specified acts of anticompetitive conduct, described by the D.C. Circuit in *United States v. Microsoft Corp.*, 253 F.3d 34, 50-80

(D.C. Cir. 2001). Microsoft may be precluded from relitigating the facts necessary to this judgment under the doctrine of offensive collateral estoppel.

To support their argument that all 350 factual findings were necessary to the District of Columbia judgment, the plaintiffs contend that the D.C. Circuit "affirmed all 412" of the district court's factual findings. In making this assertion, the plaintiffs seem to be suggesting that the scope of the judgment in the District of Columbia litigation was broader than the judgment actually affirmed by the D.C. Circuit. But the D.C. Circuit did not affirm all 412 factual findings. The D.C. Circuit considered all of the factual findings *only* when considering whether the improprieties of the district judge evidenced a bias against Microsoft that would have invalidated all of his factual findings. *See Microsoft*, 253 F.3d at 117-18. While the D.C. Circuit ultimately rejected this bias argument, it did not review the 412 factual findings to determine whether they were clearly erroneous or whether they should be affirmed on appeal. Indeed, because the D.C. Circuit reversed two of the three claims found by the district court, the district court's judgments on those two claims were deprived of all preclusive effect. *See* 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.30[1][a] (3d ed. 2003). On remand the district court must limit itself to those facts critical and necessary to the judgment actually affirmed by the D.C. Circuit.

In sum, we reverse the ruling of the district court that offensive collateral estoppel will apply to any fact found in the District of Columbia litigation that is supportive of the judgment, and remand for application of the doctrine under the standards stated in this opinion.

REVERSED AND REMANDED

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that preclusive effect should only be given to factual findings that were necessary to, rather than supportive of, the judgment affirmed by the Court of Appeals for the District of Columbia. I respectfully dissent, however, from the majority's rigid construction of the term "necessary." In my view, this rigid construction of "necessary" is inconsistent with both the purposes of

collateral estoppel and the contextual approach taken by the Supreme Court and our sister circuits when defining "necessary."

I

The majority construes "necessary" to mean critical and essential. *Ante* at 3. In so doing, the majority cites to and relies on dictionary definitions of "necessary." *Id.* at 6. As the Supreme Court has noted, however, dictionary definitions provide little guidance as to the proper construction of "necessary." In the landmark case of *McCulloch v. Maryland*, the Court expressly held that the term "necessary" must be construed in accordance with the context in which it is used:

> It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense—in that sense which common usage justifies. The word "necessary" is of this description. It has not a fixed character, peculiar to itself. It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports. *A thing may be necessary, very necessary, absolutely or indispensably necessary. To no mind would the same idea be conveyed by these several phrases.*

17 U.S. 4 Wheat. 316, 414 (1819)(emphasis added). In *McCulloch*, the Supreme Court considered whether the Necessary and Proper Clause required that the incorporation of a bank be *absolutely* necessary to the exercise of Congress's enumerated powers. *Id.* at 401. In rejecting such a rigid construction of "necessary," the Court held that the Necessary and Proper Clause only requires that a statute be conducive to and plainly adopted to serve the end for which it was enacted. *Id.* at 414, 417, 421. The Supreme Court has since reaffirmed this construction of the Necessary and Proper Clause. In *Jinks v. Richland County*—a decision issued last term—the Court held that 42 U.S.C. § 1367(d) satisfies the requirements of the Necessary and Proper Clause because it is "'conducive to the due administration of justice' . . . and is 'plainly adapted' to that end." ___ U.S. ___, ___, 123 S.Ct. 1667, 1671 (2003). In so holding, the Court noted: "[W]e long ago rejected the view that the Necessary and Proper Clause

demands that an Act of Congress be '*absolutely* necessary' to the exercise of an enumerated power." *Id.*

Further illustrating the Supreme Court's contextual approach for construing "necessary" is its tax law jurisprudence. Rather than relying upon dictionary definitions, the Court has construed "necessary" in a manner that is best suited for this highly technical area of law. For instance, in determining whether an expense can be properly deducted as an "ordinary" and "necessary" business expense, the Court has "consistently construed the term 'necessary' as imposing only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the [taxpayer's] business.'" *Comm'r v. Tellier*, 383 U.S. 687, 689 (1966)(quoting *Welch v. Helvering*, 290 U.S. 111, 113 (1933)). Such a construction reflects the Court's understanding that a correct construction of "necessary" cannot turn on dictionary definitions.

## II

A number of our sister circuits have followed the Supreme Court's contextual approach when construing "necessary" and have thus declined to mechanically apply dictionary definitions of "necessary." The D.C. Circuit, for example, has expressly stated: "[I]t is crucial to understand the context in which ["necessary"] is used in order to comprehend its meaning." *Cellular Telecomm. & Internet Ass'n v. FCC*, 330 F.3d 502, 510 (D.C. Cir. 2003). In *Cellular Telecomm. & Internet Ass'n*, the D.C. Circuit considered whether the FCC's enforcement of wireless number portability rules was "necessary" for the protection of consumers. *Id.* at 504. In construing the term "necessary," the D.C. Circuit noted that "a dictionary definition by no means tells us what 'necessary' means in every statutory context," *id.* at 510, because "the word 'necessary' does not always mean absolutely required or indispensable." *Id.* at 509-10. The court further observed: "'[C]ourts have frequently interpreted the word 'necessary' to mean less than absolutely essential, and have explicitly found that a measure may be 'necessary' even though acceptable alternatives have not been exhausted.'" *Id.* at 510 (quoting *Natural Res. Def. Council v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988)). Accordingly, the D.C. Circuit held that the FCC need not show that enforcement of its wireless

number portability rules "is *absolutely required* or *indispensable* to protect consumers." *Id.* at 511.

Similarly, the Second Circuit noted in *FTC v. Rockefeller* that the use of the term "necessary" does not automatically render something "'absolutely needed' or 'inescapable'" because "'necessary' is not always used in its most rigid sense." 591 F.2d 182, 188 (2d Cir. 1979). The specific issue before the Second Circuit in *Rockefeller* was whether an investigation conducted by the FTC fell under a statutory provision authorizing the FTC to "'gather and compile information' from, and to 'investigate,' banks 'to the extent that such action is *necessary* to the investigation' of non-banking targets." *Id.* (quoting Pub. L. 93-153 § 408(e), 87 Stat. 592)(emphasis added). Given its more flexible construction of "necessary," the court held that an ancillary investigation of a bank is "necessary" if it "arise[s] reasonably and logically out of the main investigation" of nonbanking targets. *Id.* In so holding, the court rejected the argument that "'necessary' means that the [FTC] must pursue all other 'reasonably available alternatives' before engaging in the ancillary investigation." *Id.*

More importantly, for present purposes, two of our sister circuits have expressly declined to adopt a rigid construction of "necessary" in the context of collateral estoppel. In *Hoult v. Hoult*, the First Circuit held that "a finding is 'necessary' if it was central to the route that led the factfinder to the judgment reached, *even if the result 'could have been achieved by a different, shorter and more efficient route*.'" 157 F.3d 29, 32 (1st Cir. 1998)(quoting *Commercial Assocs. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097 (1st Cir. 1993))(emphasis added). Similarly, the Federal Circuit has stated:

> *At the outset, [when determining the applicability of collateral estoppel] it is important to note that the requirement that a finding be "necessary" to a judgment does not mean that the finding must be so crucial that, without it, the judgment could not stand*. Rather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.

*Mother's Rest. Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1571 (Fed. Cir. 1983)(emphasis added). Two circuits have thus concluded that a

finding need not be indispensable to a prior judgment in order to be deemed "necessary" to that judgment. A conclusion which is directly in conflict with the one reached by the majority today.

## III

Despite this case law, the majority adopts a rigid construction of "necessary," whereby preclusive effect is only accorded to findings deemed indispensable to a prior judgment. As previously noted, the majority holds that findings are "necessary" to a prior judgment and thereby entitled to preclusive effect if they are critical and essential to that judgment. *Random House Webster's College Dictionary* 317 (2000)(defining "critical" to mean of essential importance, indispensable); *id.* at 451 (defining "essential" to mean absolutely necessary, indispensable); *Webster's Third New International Dictionary* 538 (1981)(defining "critical" to mean indispensable); *id.* at 777 (defining "essential" to mean indispensable). The majority concludes that such a rigid construction is required due to the potential unfairness that can result from the application of offensive collateral estoppel. *Ante* at 5-6. While it is true that we must cautiously apply the doctrine of offensive collateral estoppel, we must also take care to construe the requirements for this doctrine in a manner that furthers its purpose. As noted by the Supreme Court, offensive and defensive collateral estoppel serve "to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *United States v. Mendoza*, 464 U.S. 154, 158 (1984)(quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The majority's rigid construction of "necessary," however, runs contrary to these purposes. Indeed, the majority's rigid construction of "necessary" frustrates these purposes. Very few findings, while a material element of a prior judgment, can be considered indispensable. Consequently, under the majority's construction of "necessary," litigants and courts will be forced to reconsider an issue that constituted or was a material element of a prior judgment even though that issue was fully contested and resolved in a previous proceeding.

For instance, a finding during a dispute concerning the amount of a contractor's lien on real property that the contract in question contains a provision placing a limit on the contractor's compensation is not indispensable because it does not determine the actual amount of

the contractor's lien. Nonetheless, such a finding is a material element of the judgment because it establishes that the compensation to which the contractor is entitled cannot exceed a certain amount. Accordingly, the parties should be precluded in a subsequent suit from relitigating whether the contract in question placed a limit on the contractor's compensation if this issue was fully and fairly contested during the initial proceeding. Allowing this issue to be relitigated defeats the purposes of collateral estoppel, which, as previously noted, are "to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Id.*

IV

As a means of drawing an appropriate balance between the costs and purposes of offensive collateral estoppel, I believe a finding should be deemed "necessary" to a prior judgment if it concerns a matter that was "distinctly put in issue and directly determined by a court of competent jurisdiction," *Montana v. United States*, 440 U.S. 147, 153 (1979)(quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)), and a material element of the judgment. Although less rigid than the construction adopted by the majority, this construction of "necessary" offers the same protection against the potential unfairness of offensive collateral estoppel with which the majority is concerned while better serving the purposes of this doctrine. By requiring that a matter be directly put in issue, determined and a material element of a prior judgment, this construction of "necessary" prevents nonessential dicta and ancillary findings from being accorded preclusive effect.

With respect to the present case, application of this less rigid construction of "necessary" would not unfairly prejudice Microsoft, the party against whom collateral estoppel is being asserted. Microsoft had sufficient incentive to vigorously contest every issue raised during the government's antitrust case given that its continued existence as a single entity was directly at issue. Moreover, Microsoft understood that the findings rendered in the government's antitrust case would determine, in large part, whether private parties would commence civil actions against Microsoft. Accordingly, Microsoft should be precluded from relitigating issues that were distinctly raised, deter-

mined and a material element of the judgment affirmed by the D.C. Circuit.

## V

For the foregoing reasons, I concur in the conclusion that preclusive effect should only be accorded to factual findings that were "necessary" to the judgment affirmed by the D.C. Circuit. I respectfully dissent, however, from the majority's determination that a factual finding must be indispensable to a prior judgment in order to be "necessary" to that judgment. In my view, factual findings made during the course of a proceeding are "necessary" to the judgment rendered in that proceeding if they concern a matter that was "distinctly put in issue and directly determined," *Montana*, 440 U.S. at 153, and a material element of that judgment. Accordingly, on remand, I believe preclusive effect should be accorded to factual findings that meet the construction of "necessary" as set forth in my opinion.