In re Virgil G. BODDIFORD, Mary E. Boddiford, Debtors.

Virgil G. Boddiford, Mary E. Boddiford, Plaintiffs,

v.

Internal Revenue Service, Defendant.

Bankruptcy No. 7–02–00369–WSA.
Adversary No. 03–83.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

April 27, 2004.

Robert T. Copeland, Abingdon, VA, for debtors.

Robert E. Wick, Bristol, VA, trustee.

### MEMORANDUM DECISION

WILLIAM F. STONE, JR., Bankruptcy Judge.

In 1998 the Defendant, the Internal Revenue Service, audited the Plaintiffs, Virgil and Mary Boddiford, for the tax years 1994, 1995, and 1996. The Service determined that the Boddifords improperly claimed deductions relating to the operation of a home office and asserted a civil fraud penalty for wilfulness. As an alternative to litigation, Mr. Boddiford and the IRS entered into a "closing agreement" on February 9, 2000 in which Mr. Boddiford consented to the assessment of specified taxes and penalties for the tax years in question. A portion of the penalties was assessed under 26 U.S.C. § 6663, a section imposing a penalty of seventy-five percent of any underpayment attributable to fraud. The parties agreed to a reduced penalty under that section of twenty-five percent of the underpayment.

The Boddifords filed a Chapter 7 petition in this Court on January 28, 2002. On June 5, 2003 the Debtors filed this adversary proceeding seeking a declaratory judgment determining the dischargeability of the tax debt dealt with in the closing agreement. In their complaint the Debtors argue that the home office deductions were taken in good faith and do not rise to the level of fraud. In the alternative the complaint asked that Mary Boddiford be held not responsible for the debts because she is entitled to innocent spouse relief under 26 U.S.C. § 6015 as she did not participate in the filing of the tax returns. In its answer to the complaint, the IRS states that there is no case or controversy between it and Mary Boddiford. The Court subsequently issued an agreed order holding that any tax debt of Ms. Boddiford for the years in question to be dischargeable and dismissing her as a party to the adversary proceeding. The IRS filed a Motion for Summary Judgment in which it argued that because Mr. Boddiford entered into the closing agreement, he was barred from re-litigating the issue of fraud. The Debtor has filed a response in which he argues that collateral estoppel does not bar him from disputing the alleged fraudulent nature of his actions as that was not dealt with in the closing agreement.

### CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. This is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

 Closing agreements are governed by 26 U.S.C. § 7121, which provides in part that:

(b) ...such agreement shall be final and conclusive, and except upon a showing of fraud or malfeasance, or misrepresentation of a material fact–

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

The case law on point supports the proposition that closing agreements are meant to be final as to the issues included, "the court may invoke traditional contract principles to interpret the terms of the closing agreement; the court cannot, however, fundamentally alter the agreement as written." *Marathon Oil Co. v. United States,* 42 Fed.Cl. 267, 275 (1998), *aff'd* 215 F.3d 1343 (Fed.Cir.1999).

 The United States Supreme Court has held that, in suits to determine dischargeability, collateral estoppel may prevent re-litigation of identical elements which were actually litigated and determined. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A party asserting the defense of collateral estoppel must prove that 1) the issue or fact is identical to the one previously litigated; 2) the issue or fact was actually resolved in the prior proceeding; 3) the issue or fact was critical and necessary to the judgment in the prior proceeding; 4) the judgment in the prior proceeding is final and valid; and 5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *Kloth v. Microsoft Corp.,* 355 F.3d 322 (4th Cir.2004) The requirement that the issue be actually litigated does not prevent consent judgments from having collateral estoppel effect. Both parties in the case at bar agree that such judgments can preclude subsequent litigation of the issue which has been resolved by the parties' agreement. In such a situation the intention of the parties is the determining factor in satisfying this requirement. Both parties cite *In re Olson,* 170 B.R. 161 (Bankr.D.N.D.1994), for this proposition. In that case the Court held that "[w]hen a court is confronted with a consent judgment founded upon an agreement of the parties, the issue of 'intention' then becomes the polestar for satisfying the defect inherent in fulfilling [the] 'actually litigated' requirement of collateral estoppel." *Id.* at 167. The Court in *Olson* went on to say that such an agreement must contain, "far reaching preclusive language." *Id.*

 To determine whether the parties intended to settle the issue of fraud on the part of Mr. Boddiford so as to satisfy the "actually litigated" requirement of collateral estoppel, the Court will first turn to the language of the closing agreement. The closing agreement uses IRS Form 866–c (Rev. July 1981) which is titled "Agreement as to Final Determination of Tax Liability." Nothing on the form refers to the fraudulent nature of Mr. Boddiford's conduct. In fact the word "fraud" only appears once on the one page form and refers to the fact that the agreement may be reopened in the case that a fraud is committed on or by Mr. Boddiford in entering into the agreement. The form does apportion the taxes and penalties owed to

particular Internal Revenue Code sections. In Mr. Boddiford's agreement a portion of the total sum was attributable to 26 U.S.C. § 6663, which states in part, "[i]f any part of any underpayment...is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." *Id.* at (a). The case of *In re Stodut,* 181 B.R. 751 (Bankr.S.D.N.Y. 1995), dealt with a settlement agreement reached between the taxpayers and the IRS on IRS Form 870–AD in which the taxpayer stipulated to owing certain taxes and penalties. Like the agreement before this Court, the stipulation in *Stodut* attributed a portion of the moneys owed to a civil fraud penalty. In a subsequent bankruptcy proceeding to determine the dischargeability of the agreed upon tax debt, the IRS sought to preclude the taxpayers from disputing the fraudulent nature of their conduct because of the stipulation. The Bankruptcy Court rejected its argument, holding that a "civil fraud assessment, even if it is consented to in a stipulation, does not as a matter of law except a tax debt from discharge..." *Id.* at 756. Rather, the Court held, "[t]o have a preclusive effect, the stipulation must embody some indication that the parties intended to foreclose the discharge issue from future litigation." *Id.*

The holding in *Stodut* is even more persuasive in a situation where the IRS has compromised on the amount due under the fraud penalty. Such was the case in *In re Riley,* 202 B.R. 169 (Bankr.M.D.Fla.1996), where the IRS sought to bar taxpayers from disputing the fraudulent nature of their tax returns based on a closing agreement in which they stipulated to owing a penalty attributable to an Internal Revenue Code section dealing with fraud. The Court rejected the IRS' position in part because the penalty assessed was five percent of the underpayment when the pertinent section called for a fifty percent penalty. *See id.* at 176. In the present case the IRS and Mr. Boddiford agreed to a significantly reduced penalty, twenty percent versus the seventy-five percent mandated in section 6663. It seems to this Court that there is a major difference between one's agreement to pay a portion of an asserted penalty in order to settle a claim and one's agreement that he is liable for the full amount of the penalty. Such a compromise substantially weakens the argument that the agreement was intended to bind Mr. Boddiford on the issue of the fraudulent nature of his underpayment as contrasted with the agreed upon amount of his tax liability.

The IRS takes issue with the fact that the Plaintiff's brief cites to cases involving consent judgments and not closing agreements and that the two must be distinguished because the latter is governed by statute. The IRS cites no cases for this proposition and the Court does not find it persuasive. This argument is undercut when, in the same paragraph, the IRS cites to cases which stand for the proposition that closing agreements must be interpreted under traditional common law contract rules. *See S & O Liquidating Partnership v. Commissioner of Internal Revenue,* 291 F.3d 454, 459 (7th Cir.2002). Because consent judgments are also interpreted under traditional common law contract principles, it cannot be said that cases interpreting consent judgments are inapplicable when interpreting closing agreements. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975)("a consent decree or order is to be construed for enforcement purposes basically as a contract"); *see also Hooks v. Hooks,* 771 F.2d 935, 948 (6th Cir.1985)("[an agreed judgment] must be interpreted as a contract to which the rules governing contract

interpretation apply"); *Jacksonville Branch, NAACP v. Duval County School Bd.*, 978 F.2d 1574, 1578 (11th Cir.1992)("consent agreements are interpreted under the principles of contract law")

The Court will accept the IRS's position that traditional contract principles govern the Court's interpretation of closing agreements and that, absent ambiguity, the Court must look to the four corners of the agreement and not extrinsic evidence. *See Marathon, supra,* 42 Fed.Cl. at 275; *Harley–Davidson, Inc. v. Morris,* 19 F.3d 142, 148 (3d Cir.1994)(holding that when a consent judgment is unambiguous, parol evidence is inadmissible); *Hermes Automation Technology, Inc. v. Hyundai Electronics Industries, Co.,* 915 F.2d 739, 745 (1st Cir.1990)(applying the parol evidence rule to a consent judgment). Because the IRS has never asserted that the closing agreement was only partially integrated, and has stated in its brief that the agreement was "final", the Court will assume that the agreement was fully integrated and restrict its interpretation of the agreement to the document itself.

As stated above, the closing agreement does not refer to the nature of Mr. Boddiford's conduct and the case law previously discussed held that the mere assessment of penalties under sections imposing fraud penalties is insufficient to make the agreement conclusive on the issue of fraud. The IRS has taken the position that the closing agreement standing alone is sufficient to bind Mr. Boddiford to the proposition that his agreed settlement of his tax liability is attributable to fraud on his part. It cannot now ask the Court to rule based on a factual premise that was neither expressed in, nor absolutely essential to, the final agreement, "[26 U.S.C.] section 7121 does not bind the parties as to the premises underlying their agreement; they are bound only as to the matters agreed upon." *Zaentz v. Commissioner of Internal Revenue,* 90 T.C. 753, 1988 WL 34876 (1988). As applied to Mr. Boddiford's closing agreement, the parties agreed to settle his tax liability for the years in question in an agreed amount, an amount which included a substantially compromised tax fraud penalty, but they never agreed that he had fraudulently claimed the deductions which had been included in the original tax returns. Because the final written agreement between the parties did not include the language necessary to preclude future litigation on the issue of Mr. Boddiford's conduct regarding the underpayment of his taxes, collateral estoppel does not bar him from raising the issue in this adversary proceeding. The Court believes that it is noteworthy that the IRS has failed to cite to a single case in which a closing agreement was held to be binding on the issue of fraud in subsequent litigation such as bankruptcy dischargeability determinations and the Court's own search has similarly failed to produce such a case.

By separate contemporaneous order the Court will deny the IRS' Motion for Summary Judgment.

### *ORDER*

For the reasons set forth in this Court's contemporaneous Memorandum Decision, it is

### ORDERED

that the Plaintiff's Motion for Summary Judgment is DENIED.

The Clerk is directed to mail a copy of this Order and Memorandum Decision to the Plaintiff, the Plaintiff's attorney, the Defendant, the Trustee, and the Office of the United States Trustee.